## CHIPMAN et al. v. AMERICAN FORK CITY et al.

No. 2701.   Decided May 7, 1915 (148 Pac. 1103).

WATERS AND WATER COURSES—IRRIGATION—INJURIES FROM OVERFLOW
—DUTY TO REPAIR—SUFFICIENCY OF EVIDENCE.   In an action for
damages to realty caused by overflow from an irrigation ditch,
evidence on the issue whether defendants were under duty to
repair such ditch held to render non-suit improper.

Appeal from District Court, Fourth District; Hon. *A. B.
Morgan*, Judge.

Action by Thomas J. Chipman and Stephen W. Chipman,
as executors, against the American Fork City and others.

Judgment of nonsuit.   Plaintiffs appeal.

REVERSED AND REMANDED with directions.

*Edw. McGurrin, W. E. Rydalch, Jacob Evans* and *C. M.
Beck* for appellants.

*J. W. N. Whitecotton, Thurman, Wedgwood & Irvine* and
*Harvey Cluff* for respondents.

STRAUP, C. J.

The plaintiffs were non-suited and appeal.   The action is
brought to recover damages to real property alleged to have
been caused from waters overflowing a ditch or canal along
a street in American Fork City.   It is grounded on negli-
gence, failing to keep the ditch or canal free from obstruc-
tions.   The non-suit was granted on the theory that no legal
duty was shown on the defendants or either of them to main-
tain the ditch or to keep it in repair or free from obstruc-
tions.

American Fork creek has its source in the mountains about
six miles from American Fork City.   The creek courses south-
westerly through the city and empties into Utah Lake.   About

all the waters of the creek in an early day were appropriated and since used by the defendants. The defendants Pleasant Grove City and Lehi Irrigation Company take their waters from the creek not far from the mouth of the canyon; one carrying its waters easterly and southerly to Pleasant Grove City, the other westerly and southerly to Lehi City, where they are distributed to the inhabitants of the respective cities and to farmers in those vicinities. American Fork takes its waters a considerable distance below the intake of the other defendants and by means of ditches and laterals distributes them to its inhabitants and farmers in that vicinity. Each defendant regulates and controls the waters and the distribution of them in their respective cities, etc., levying and collecting taxes and assessments for such purpose and for maintenance and repair of their respective distributive systems. In about the year 1885 American Fork City, and within the corporate limits of that city, diverted the waters from the natural channel running in a southwesterly direction, and, by means of a ditch or canal, carried them along what is known as Camp street in a more southerly direction to the lake. From thence on the waters of the creek coursed to the lake from such point of diversion in such artificial ditch or channel instead of the natural channel. It is from that artificial ditch or channel that the overflow occurred and spread over and injured plaintiffs' realty. There is evidence to show that that ditch or canal was regulated, controlled, cleaned and repaired by American Fork City in the same manner that it regulated and controlled all other ditches of its distributive system, and defrayed and paid the necessary costs and expenses therefor out of public funds. We think it quite clear that the nonsuit was erroneously granted as to that defendant. It is not so clear as to the other defendants. But there is this: Witnesses speak of such artificial ditch as a waste ditch, and as such was used in common by the three defendants. What they mean, at least some of them, by the term ''waste ditch'' is a ditch or canal to carry the surplus or unusued waters of the creek. The mayor of American Fork City testified that the ditch or canal in question was used and maintained by all three de-

fendants; that they all assisted in maintaining it and all expended money in cleaning it out. The city marshal and an ex-councilman of the defendant Pleasant Grove City testified that there was a portion of the ditch in question that Pleasant Grove assisted in taking car of; that on occasions of high water there was a "certain stent (stretch) that Pleasant Grove was allotted to and to see that it was repaired for flood waters; that the defendant Lehi Irrigation Company took upon itself the burden to maintain a certain portion and American Fork City a portion; that American Fork City had the north portion, Pleasant Grove City the center, and the other defendant the south portion." There also is evidence to show that each defendant did work with men and teams on the ditch in maintaining, repairing, and cleaning it and defrayed the costs and expenses therefor out of public funds. Some of the witnesses testified that that was done if not year after year, at many different times. One of the witnesses testified that each defendant maintained its "section of the artificial ditch ever since it has been constructed by repairing, keeping it up, keeping the water within bounds, so it wouldn't do any damage."

Counsel for defendants Pleasant Grove City and Lehi Irrigation Company argue that what was done by those defendants were "mere neighborly acts" and "acts of charity and benevolence," and that such acts should not now be turned into acts "of duty and liability." The witnesses seemingly did not so regard such acts, at least not all of them. The mayor of American Fork City did not so regard them. To the contrary, he testified that American Fork City always contended that the other defendants were in duty bound to maintain and take care of their portions of the ditch. The argument is but an inference of fact. As strong an opposing argument can be made that one does not ordinarily, at his own expense, year after year, maintain and repair and clean out a ditch of another on the theory of mere charity or benevolence, especially one municipality on a ditch of another municipality, but, rather on the theory that he has some interest in the ditch or has some duty imposed on him to do so. On the evidence, we think a just inference arises that each of the de-

Appeal from Fourth District.

fendants had some such interest or duty, and that there is enough evidence to have resisted the motion, and that the court erred in granting it.

The judgment of the court below is therefore reversed, and the case remanded, with directions to reinstate it and to grant a new trial. Costs to the plaintiffs.

FRICK and McCARTY, JJ., concur.