DECIDED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH

*(Continued from Volume 55)*

---

## DAVIS v. MIDVALE CITY.

No. 3404.   Decided, March 25, 1920.   (189 Pac. 74.)

1. MUNICIPAL CORPORATIONS—INCREASE IN VALUE FROM WIDENING STREET IMMATERIAL IN ACTION FOR FAILURE TO REPAIR DITCH. In landowner's action against city for negligence in failure to keep ditch constructed by city in widening a street in repair, any benefit to the land and enhancement in value of the property as a result of the widening of the street was immaterial.

2. APPEAL AND ERROR—INSTRUCTIONS ADVERSE TO PLAINTIFF ARE LAW OF CASE ON DEFENDANT'S APPEAL. Where plaintiff excepted to instructions but did not assign them as error or appeal from the judgment, the instructions became the law of the case on defendant's appeal.

3. MUNICIPAL CORPORATIONS—INSTRUCTION ON NEGLIGENT CONSTRUCTION IMPROPER IN ACTION FOR FAILURE TO KEEP DITCH IN REPAIR. In landowner's action against city for negligence in failing to keep ditch in repair, where there was no allegation of negligence in original construction of ditch, instruction as to negligence in construction *held* improper, not being within the issues of the case.[1]

4. TRIAL—INSTRUCTIONS TO BE CONFINED TO THE ISSUE.   Instruc-

(1)

tions should be confined to the issues presented by the pleadings and the evidence.[2]

5. MUNICIPAL CORPORATIONS—ASSUMPTION OF JURISDICTION OVER WATER MAY RIPEN INTO A RIGHT TO CONTROL IT. A city cannot be compelled to assume jurisdiction over the water flowing into or within the city; but where it, in the exercise of its discretion under statutes relating thereto, does assume jurisdiction and thereafter continues to exercise it, such conduct may ripen into a right to not only control the water flowing into the city but also the right to act as distributing agent for those entitled to the water.

6. MUNICIPAL CORPORATIONS—CITY LIABLE FOR NEGLIGENCE IN CONTROL OF WATER OVER WHICH IT HAS ASSUMED JURISDICTION. A city may become liable for injury caused by its negligence in the control of water flowing into the city over which it has assumed jurisdiction.[3]

7. MUNICIPAL CORPORATIONS—CITY NOT REQUIRED TO EXERCISE CONTROL AND REGULATION OF DITCH RUNNING ALONG STREET. City cannot be required to assume control and regulation of water in ditch running alongside of street which has been exclusively managed and controlled by the farmers who alone are benefited thereby, the exercising of control over such ditch being merely discretionary with the city and not mandatory.[4]

8. MUNICIPAL CORPORATIONS—CITY RECONSTRUCTING DITCH ON WIDENING STREET NOT REQUIRED TO KEEP NEW DITCH IN REPAIR. City's agreement to widen street, to reconstruct old ditch and to grade and maintain street, in consideration of landowner's conveyance of easement in strip of land, did not obligate city to keep reconstructed ditch in repair so as to prevent injury to the land of such owner, its obligation being merely to exercise ordinary care in the reconstruction of the ditch so as not to injure such land.[5]

9. MUNICIPAL CORPORATIONS—OBSTRUCTION OF ACCESS CONSTITUTES NUISANCE ENTITLING OWNER TO RELIEF. If an obstruction is

---

[1] *Bush* v. *Bush*, 55 Utah, 237, 184 Pac. 823.

[2] *Pugmire* v. *O. S. L. R. R.*, 33 Utah, 27, 92 Pac. 762; 13 L. R. A. (N. S.) 565, 126 Am. St. Rep. 805, 14 Ann. Cas. 384; *Martindale* v. *O. S. L. R. R.*, 48 Utah, 464, 160 Pac. 278.

[3] *Levy* v. *Salt Lake City*, 5 Utah, 302, 16 Pac. 598.

[4] *Springville* v. *Fullmer*, 7 Utah, 450, 27 Pac. 577; *Holman* v. *Pleasant Grove*, 8 Utah, 78, 30 Pac. 72; *Fisher* v. *Bountiful City*, 21 Utah, 29, 59 Pac. 520.

[5] *Chipman* v. *American Fork City*, 46 Utah, 134, 148 Pac. 1103; Id., 54 Utah, 93, 179 Pac. 742.

wrongfully placed between an abutting owner and the street itself so as to prevent access from the street to the owner's premises, such obstruction becomes a nuisance, and the owner of the premises is entitled to legal or equitable relief.

Appeal from District Court, Third District, Salt Lake County; *P. C. Evans,* Judge.

Action by Nora F. Davis against Midvale City. Judgment for plaintiff, and defendant appeals.

REVERSED.

*H. A. Smith & Son,* of Salt Lake City, for appellant.

*David W. Moffat,* of Murray, for respondent.

THURMAN, J.

Plaintiff's complaint in substance alleges that she. is the owner of certain land in Salt Lake county, Utah, consisting of eight and sixty-nine hundredths acres; that a certain street of defendant city known as Wasatch street extends from State street on the east to the main street of said city on the west, a distance of approximately one mile; that said street passes the said land of plaintiff and prior to August or September, 1914, said street, at the point where it passes plaintiff's land, was only twelve or fourteen feet in width and was occupied by a roadway and a ditch for carrying water to irrigate lands lying west; that on or about the date last mentioned defendant undertook to widen said street and did widen it to a width of about forty-two feet, taking from the north side of plaintiff's said land a strip extending the whole length thereof about eight feet in width, and removed the said irrigating ditch from the place where it previously, for many years, had run along said street; that

said ditch in its old location had become sodded and small willows and other vegetation had grown on the banks thereof and caused it to become firm and well established. It is then alleged that in removing the said ditch defendant reconstructed it on the south side of said street in close proximity to the new fence line establishing the south boundary line of said street and occupying that part of said street dedicated and set apart for sidewalk purposes, thereby preventing the use thereof for said purpose and rendering plaintiff's said land inaccessible from said street along the whole northern boundary of her said land. It is further alleged by plaintiff that during the years 1915, 1916, and 1917 defendant city negligently and carelessly failed and neglected and refused to keep said ditch in repair and permitted the water to flow over the same, whereby it would wash away a portion of plaintiff's land and undermine the fence along the north boundary thereof, and thereby inflict, and is constantly inflicting, damage and injury to plaintiff's property and constantly depreciating the value thereof, all to plaintiff's damage in the sum of $3,000, for which sum she prays judgment.

Defendant, by way of answer, admitted the location of said Wasatch street and the water course or ditch thereon, and that said ditch was used for the irrigation of lands lying west of said street and for carrying waste water which flowed in said ditch. Defendant then, in substance, admitted that it widened said street and reconstructed said ditch substantially as stated in the complaint, but alleged that the land taken was dedicated for said purpose by plaintiff and others owning the land so taken and used, and that the improvements so made were done by it at great expense and when completed were turned over to and accepted by plaintiff and the other owners of land so taken. Defendant further alleged that the improvements so made were of great benefit to the plaintiff and enhanced the value of her premises. It denies generally the remaining allegations of the complaint, and further alleges that the old water channel and the new ditch as constructed were at all times the sub-

ject of private ownership, and that the defendant never had any interest in said ditch or water channel or the water flowing therein, nor did it ever exercise any control thereof or regulate the same, and does not now exercise any jurisdiction whatever over or concerning the same.

In view of the issues presented by the complaint, a considerable portion of the answer of defendant was wholly immaterial, and likewise plaintiff's reply thereto. It is not necessary to specifically mention the portions of the pleadings to which we refer.

The cause was tried to a jury, verdict was rendered for plaintiff, judgment entered, and defendant appeals.

The errors assigned relate to certain instructions to the jury and refusals to instruct as requested by the defendant. A careful examination of the complaint discloses the fact that the plaintiff complained of no wrong on the part of defendant except that it constructed the new ditch at the place dedicated for a sidewalk, rendering plaintiff's land inaccessible from the street, and neglected and failed to keep the ditch in repair during certain years, by means of which the water washed away some of her land and undermined her fence. It is nowhere alleged that the taking of the land for either the street or the ditch was wrongful, or without the plaintiff's consent. The answer denies the material issues to which we have referred and alleges matter tending to show nonliability as a matter of law. These are the only legitimate issues presented to the court so far as the pleadings are concerned. The defendant, however, in its answer alleged that the improvements made by it had greatly benefited the plaintiff and enhanced the value of her property. Such an allegation might have been pertinent in an action for the condemnation of property under the law of eminent domain, but it certainly had no proper place in an action for damages on the grounds of negligence. In any event, the trial of the case to a great extent proceeded upon the theory that it was an action under the law of eminent domain instead of an action for damages for negligence. This conduct of the par-

ties brought confusion into the case and tended to befog the real issues presented in the complaint. We are disposed to agree with the statement of appellant's counsel in his brief filed in the case that—

"The issues became so mixed and involved that even the attorneys could not tell finally what they were contending for."

Some of the court's instructions to the jury, instead of clarifying the situation, tended rather to add to the confusion. The error on the part of the court was largely due to the conduct of the parties to which we have referred. It is not our purpose to review in detail the intructions of the court to which reference has been made. It is sufficient to state generally that all of said instructions based on the theory of a condemnation proceeding had no place in the case, not alone because they were outside the issues made by the pleadings, but also because the court by another instruction clearly within the issues took from the jury all right to consider the very questions which it afterwards submitted for their consideration. This will appear more clearly when we come to consider the instructions of the court.

There is no serious conflict in the evidence relating to the facts which we deem material. Wasatch street, as described in the pleadings, extends from State street on the east to the main street of defendant city on the west, for a distance of approximately one mile. Prior to August, 1914, the street varied in width from twelve to thirty-three feet. It was unimproved, although a road on the north side of the street was traveled by those who had occasion to use it. An old water ditch or channel (whether natural or artificial is immaterial) ran on the south side of the street and was used for conveying water to farmers west of the premises in controversy, and also conveyed such waste water as found its way into the channel. Neither the water channel nor the water flowing therein had ever been regulated or controlled by defendant city, neither had defendant derived any revenue therefrom nor exercised any jurisdiction over or concerning either the channel or the water. In August,

1914, the abutting owners of Wasatch street, including the plaintiff, petitioned the defendant city to widen and improve the street and reconstruct the water channel, which at that time formed a part of the street. As the petition referred to is a controlling factor in our deliberations and is not voluminous, we quote it in full, except the names of the petitioners subscribed thereto:

"We, the undersigned property owners on either side of that certain street or lane, commonly known as 'Angel Row,' and officially designated and called 'Wasatch Street,' running east and west from State Road to Main street, in Midvale City, do hereby petition the honorable mayor and city council of said Midvale City, to open and widen said street to a width of forty-two feet, including the present street, upon the following conditions: The said undersigned property owners will convey by easement to said Midvale City and the public, all land fronting on either side of said street, as may be necessary for the opening and widening thereof to the width of forty-two feet. The said Midvale City to establish the proposed new property lines, rebuild all present fences on such lines, reconstruct water ditches, flumes, etc., and grade and maintain said street, in a manner commensurate with public demands from time to time."

In pursuance of the request made by the petitioners, the city laid out the street forty-two feet in width throughout its length, taking from the owners on each side of the street such additional land as was necessary to make the street a uniform width of forty-two feet.

The portion taken from the plaintiff was a fraction over eight feet. In addition thereto, the defendant took a strip of three feet in width from the abutting owners on the south side, including the plaintiff, upon which to construct a new water channel in the place of the old one which was to be filled up and used for street purposes. There is evidence on the part of the defendant that the additional three feet for the water ditch was taken by defendant with the express consent of the landowners including the plaintiff; but this is denied by the plaintiff. The conflict, however, is immaterial in view of the instructions of the court to which reference will hereinafter be made. The defendant entered upon the three-foot strip of land and constructed a water ditch thereon the whole width of the strip, and also in part re-

constructed plaintiff's fence and placed it upon the south bank of the ditch as and for her property line. In constructing the ditch on the three-foot strip opposite plaintiff's land, it became necessary to dig up several trees which were growing thereon. This was done, and the trees, at plaintiff's request, were placed on her land south of the ditch. The work was done by defendant at such times and in such manner as might have been observed by any one in the vicinity giving any attention to what was going on. The plaintiff lived only a few rods from the ditch and was at home during the progress of the work. Defendant constructed the ditch by excavating the earth to a depth of eighteen inches or two feet, and to a width of three feet as heretofore stated. Within a year or two after the ditch was made, the exact time being somewhat indefinite, at various points along the ditch the defendant put in slag so as to prevent washing away the banks. The testimony shows that at the points where slag was used the ditch maintained its normal width of three feet, while between these points, in many places the sides of the ditch washed away, making it wider, and in some instances undermining plaintiff's fence as charged in the complaint. The defendant, in prosecuting the work of improvement, filled up the old channel and graded the street. It is contended by respondent that this work in strengthening the ditch after the ditch was constructed was in the nature of repairs, while defendant, on the other hand, contends that such work was done on the north bank of the ditch for the purpose of protecting the street and not for the protection of plaintiff's land.

The foregoing are the controlling facts as we view the record. Much evidence was admitted in the case as to whether or not plaintiff was damaged or benefited by the improvements made—whether her land had increased in value and how much it was worth before and how much after the improvements were made. All such testimony and the instructions of the court bearing upon those matters were, in our opinion, immaterial under the issues made by the pleadings. These are the matters to which we referred

in the beginning as tending to befog the issues and bring confusion into the case.

At the close of the testimony, the court, in instruction No. 4 among other things, in effect stated that inasmuch as plaintiff and the other landowners abutting on the street had requested that the street be widened and that the improvement was made in compliance with their written petition, there being no agreement on the part of defendant to pay compensation for the ground included in the forty-two feet in width, therefore the plaintiff was not entitled to compensation therefor. In the same instruction the court stated that as the plaintiff stood by and knew that the construction was going on and that the ditch was being located and constructed, and made no objection or protest, she was thereby estopped from claiming any compensation for the three-foot strip upon which the ditch was constructed. These instructions were excepted to by plaintiff, but plaintiff has not assigned them as error nor has she appealed therefrom. As stated by appellant, these instructions became the law of the case. It is not incumbent upon this court to determine their validity or invalidity or whether the court erred in giving them or not. For the purpose of this case they are binding upon this court as well as the court below and the parties litigant. By these instructions the court eliminated from the case every conceivable question pertaining to the law of eminent domain even if such questions had been admissible under the pleadings.

Appellant assigns as error the giving of instruction No. 5, and especially certain portions thereof specifically referred to in the assignment. A more comprehensive understanding of this assignment will be obtained if we quote the instructions in full:

"You are instructed, however, that inasmuch as the defendant city undertook and assumed to construct the new ditch, it was required to exercise ordinary care in the construction; and, if it did not construct the new ditch with such care as an ordinarily prudent person would have used under the same circumstances, the defendant city would then be negligent; and if by reason of such negligent construction, if you find that the defendant city was negligent in

this regard, the plaintiff's property was substantially injured and the value thereof depreciated, it would be your duty to find the amount of depreciation resulting therefrom. If the defendant city did not use ordinary care in the construction and grading of the street where it passed along the plaintiff's property, and the said property was thereby depreciated in value, the plaintiff would be entitled to recover."

In its assignment appellant segregated the instruction into four parts, assigning each part as a distinct error. The exception is taken: (1) To all the words from the beginning of the instruction down to the first semicolon; (2) to all the words from the first semicolon down to the second semicolon; (3) to all the words from the second semicolon down to the first period; and (4) to all the remaining words of the instruction. In our opinion the segregation of the instruction for the purpose of taking the exceptions was an unnecessary precaution. We believe the instruction in this case, as a whole, is bad and bad in each of the designated parts. Nowhere in the complaint is there a charge of negligence in the construction of the ditch or in the construction or grading of the street. There is a charge of negligence in respect to keeping the ditch in repair, but none whatever as to its original construction. Under the tissues presented by the complaint, the instruction was fundamentally wrong by all the authorities with which we are familiar, unless it appears that the proceedings were such as to show a waiver of the objection. *Bush* v. *Bush,* 55 Utah, 237, 184 Pac. 823, a recent decision of this court. We find nothing in the present case constituting a waiver. The question is therefore governed by the general rule.

"Instructions should be confined to the issues presented by the pleadings and the evidence. It is improper to give an instruction announcing a naked legal proposition, however correct it may be, unless it bears upon and is connected with the issues involved; and unless, further, there has been received some competent evidence to which the jury may apply it. Such an instruction tends to distract the minds of the jury from the real question submitted to them for determination, and thereby mislead

them, and, if requested, may be properly refused." 38 Cyc. 1612, 1613.

"In determining the scope of its instructions, the court must keep in mind the issues made by the pleadings in the cause; and the general rule is that all instructions must be confined to those issues, and the evidence in support thereof, and that no instruction should be given which tenders an issue that is not supported by the pleadings or which deviates therefrom in any material respect." 14 R. C. L. 784, 785.

"Instructions to a jury must be based upon, and be applicable to, the pleadings and evidence. Instructions should be neither broader nor narrower than the pleadings, they should be predicated on all the issues raised by the pleadings and supported by the evidence, and they are equally faulty whether they enlarge or restrict the issues." 11 Enc. Pl. & Pr. 158, 159.

See, also the following cases cited by appellant: *Pugmire* v. *O. S. L. R. R.*, 33 Utah, 27, 92 Pac. 762, 13 L. R. A. (N. S.) 565, 126 Am. St. Rep. 805, 14 Ann. Cas. 384; *Martindale* v. *O. S. L. R.*, *R.* 48 Utah, 464, 160 Pac. 278; 21 R. C. L. 608; *C. & E. I. R. R.* v. *Jennings*, 190 Ill. 478, 60 N. E. 818, 54 L. R. A. 827; *Browning* v. *Berry*, 107 N. C. 231, 12 S. E. 195, 10 L. R. A. 726; *Maynard* v. *Oregon R. & N. Co.*, 46 Or. 15, 78 Pac. 983, 68 L. R. A. 477; *Lake Street Elevated R. R.* v. *Shaw*, 203 Ill. 39, 67 N. E. 374.

Appellant's exception to instruction No. 5 was well taken, and its assignment of error relating thereto is sustained.

Appellant also assigns as error the court's instruction No. 6, and especially to the words in italics:

"There is one other element which you are also to consider. It is alleged by the plaintiff that it was the duty of the defendant city to maintain the canal in a good state of repair, and that the city failed in this duty. The defendant denies that it assumed any such duty or that it was in any way responsible for the maintenance or the condition of the canal subsequent to its completion.

"*If by a preponderance of the evidence you find that the canal is upon the street or highway, over which the defendant city has jurisdiction and control, then you will find that it is the duty of the city to exercise ordinary care in maintaining and keeping the ditch in a reasonably good state of repair, and that, if the defendant city*

*failed to use such care as an ordinarily prudent person would have used under all the circumstances of the case, then it would be your duty to find the defendant city negligent in that regard. If, on the other hand, you should find from the evidence that the defendant city constructed said ditch outside of the limits of Wasatch street and that it thereafter assumed no control, but that the duty to maintain and control rested upon others, then the city cannot be held liable for any damages resulting from a failure to maintain the ditch in a good state of repair.*" (Italics ours.)

It is not contended by appellant that the instruction or the words excepted to are outside the issues made by the pleadings. The objection is placed upon a broader ground. It is contended that the instruction, under the undisputed facts of the case, is fundamentally wrong and should not have been given. If it was wrong as a matter of law, as applicable to the facts of the case, it constitutes reversible error, for there can be no doubt that it was prejudicial. As the case stands on the record, the only possible grounds upon which plaintiff could have recovered any damages at all was the ground covered by this instruction. It is contended by appellant that the defendant was under no obligation to keep the ditch in repair after it was once constructed. As we have already determined, the plaintiff could not recover in this action for negligence in the original construction of the ditch because the complaint does not allege negligence in that regard.

The question, then is: Was the defendant, under the facts of this case, as a matter of law, required to keep the ditch in repair so that the water flowing therein would not damage the plaintiff's property? To answer this question we must first review the undisputed facts and then apply the law applicable thereto. Prior to the time when the old ditch was abandoned and the new ditch constructed in 1914, the defendant city had never assumed any jurisdiction or control over or concerning the old ditch, had never regulated or attempted to control or regulate the water flowing therein, and had never derived any revenue or other municipal benefit therefrom. The old ditch and the water that flowed therein was for the use and benefit of farmers west of plaintiff's premises and had been by them exclusively managed

and controlled during all its previous history. In these circumstances the first question is: Could the farmers, who had hitherto regulated and controlled the old ditch and the water flowing therein and derived all the benefit therefrom., have compelled the defendant to assume the control and regulation thereof in 1914 or at any time prior thereto? If not, then the next question to be determined will be: Did the assumption of such jurisdiction as was assumed by defendant in 1914, when it reconstructed the ditch, impose upon it the duty of thereafter keeping the ditch in repair? Answering the first question, what is the law? Unfortunately we have no decision by this court directly in point. The nearest approach thereto is the case of *Chipman* v. *American Fork City et al.*, 54 Utah 93, 179 Pac. 742. See, also, the same case on a former appeal, reported in 46 Utah, 134, 148 Pac. 1103. In these cases it appears that American Fork City had assumed jurisdiction of all the waters flowing into the city and controlled, regulated, and distributed the same. It controlled the water ditches used in distributing the water, kept them in repair, and paid therefor out of the funds of the municipality. The ditch in question in that case was made by American Fork City and the other defendants in the case as early as 1885 and had ever since been maintained and kept in repair by said city, aided and assisted by the other defendants. Besides this, it was used by American Fork City whenever necessary to carry away the waste or surplus water of its system. It was because of this assumption of jurisdiction on the part of the city and its conduct thereafter in respect to the ditch and its relation thereto that this court held the city liable.

It is not the law of this state that a city "can be compelled" to assume jurisdiction over the water flowing into or within the city, but where the city, in the exercise of its discretion under the statutes relating thereto, does assume jurisdiction and thereafter continues to exercise it, such conduct may ripen into a right to not only control the water flowing into the city but also the right to act as distributing agent for those entitled to the water. In the exercise

of such right it may also become liable for injury        5, 6
caused by negligence. *Levy* v. *Salt Lake City*, 5 Utah,
302, 16 Pac. 598.

There are several decisions of this court which tend to
hold, notwithstanding our statutes, which are exceedingly
liberal in respect to the control of water by municipalities,
that the exercise of such powers is limited by certain con-
ditions and is at most only a discretionary power and not
one obligatory upon the city. *Springville* v. *Fullmer*, 7 Utah,
450, 27 Pac. 577; *Holman* v. *Pleasant Grove*, 8 Utah, 78, 30
Pac. 72; *Fisher* v. *Bountiful City*, 21 Utah, 29, 59 Pac. 520.
It will be remembered we are now discussing the question
as to whether the farmers who owned the old ditch and
water flowing therein could have compelled the defendant
to assume jurisdiction. The Utah cases referred to, so far
from holding it to be the duty of the city to assume juris-
diction of the water within its limits, deny the power of the
city to assume jurisdiction to control and distribute the water
without the consent of those having the right to its use.

As to whether or not the exercise of power by a city in a
case of this kind is mandatory or discretionary, the case of
*O'Donnell* v. *City of Syracuse*, 184 N. Y. 1, 76 N. E. 738,
3 L. R. A. (N. S.) 1053, 112 Am. St. Rep. 558, 6 Ann. Cas.
173, is especially instructive and sustains appellant's con-
tention that the power is discretionary only. In the light of
these cases, we are strongly inclined to the opinion
that the defendant could not have been compelled by        7
the owners of the old ditch and water to assume juris-
diction to control and regulate the same.

The next question is: Did the construction of the new
ditch in 1914, and the conduct of defendant in respect
thereto, so alter its relation as to render it liable for the
consequences of its failure to keep the ditch in repair: If
the defendant was not under obligation to keep the *old*
ditch in repair, what is there in the evidence to show that
it obligated itself to keep the *new* ditch in repair? The ob-
ligation of the defendant, if it exist at all, must be found
in the written petition of the abutting owners in 1914, quoted

by us near the beginning of this opinion, and the conduct
of defendant in pursuance thereof. Referring to the lan-
guage of the petition, we find that, in consideration of the
petitioners conveying an easement in the land to widen the
street, the city was to "establish the new property lines,
rebuild all the present fences on said new lines, *reconstruct*
water ditches, flumes, etc., and *grade and maintain* said
street, in a manner commensurate with public demands from
time to time." (Italics ours.) In respect to the ditch, all
that was required of the city was to reconstruct it. In re-
spect to the street, the city was required to grade and main-
tain it in a manner commensurate with public demands.
There is an important distinction made by the petitioners
themselves between the obligation imposed on the city in
respect to the street and those imposed in respect to the
ditch. The obligations imposed by the petition do not in-
clude keeping the ditch in repair, but it does impose such
obligation in respect to the street. *Expressio unius est ex-
clusio alterius.* As far as the ditch was concerned, the city
was only required to reconstruct it. When that was ac-
complished, the obligation of the city was discharged, its
jurisdiction ceased, and thereafter it had no further con-
cern respecting the ditch except as it might be incidentally
affected while repairing the street. These propositions seem
to the writer to be incontrovertible. We have no doubt that
in discharging its obligation to reconstruct the ditch the city
was bound to use ordinary care and construct a ditch that
would be reasonably sufficient to convey the water so that
it would not injure the property of the abutting owners;
but, as heretofore stated, whether or not the ditch as con-
structed was reasonably sufficient is a matter we are pre-
cluded from determining in this proceeding because the de-
lict of defendant, if any, in that regard is not alleged in the
complaint.

It is contended by respondent that after the ditch was
constructed the city made certain repairs on the same and
thereby assumed an obligation to keep the city in repair. If
the city undertook to repair the ditch when it was

not bound to do it, we seriously doubt if such conduct alone would create a continuing obligation. In an Ohio case in some respects similar to the case at bar it was said:

"Since it was not the duty of the city to make any provision to protect these lands from overflow by the waters of the river, it is plain that it is not liable on account of the inadequacy of the provisions which it saw fit to make." *City of Hamilton* v. *Ashbrook*, 62 Ohio St. 511, 519, 57 N. E. 239, 241.

Of course, if the city in making the repairs, if it did make any, had by some positive act done something which caused damage to an abutting owner, it might be held responsible even though the act done was in an attempt to repair the ditch. But that is not the present case. It is not claimed that the city did anything which caused the damage, but that it failed, neglected, and refused to keep the ditch in repair. In these circumstances we are not prepared to hold, even if the city after the ditch was constructed did some act by way of strengthening and improving the ditch it had obligated itself to construct, that it thereby rendered itself forever after liable to keep the ditch in repair. Under the evidence in this case and the law applicable thereto, we are forced to the conclusion that the defendant was not under obligation to keep the ditch in repair after it was constructed, and for that reason we are compelled to hold that the instruction complained of was wrong and that appellant's exception thereto should be sustained.

As the judgment must be reversed and the cause remanded for the reasons stated, it becomes our duty to make reference to one other question not heretofore considered. Respondent in her complaint alleges in substance that the new ditch was constructed at the place dedicated for a sidewalk, preventing its use for that purpose, and that her property was thereby rendered inaccessible from the street. But little evidence was introduced concerning this question, none whatever as to any specific amount of damage; so that, even if as a matter of law respondent could claim damages for the alleged wrong complained of, such damages could not be ascertained and computed in the pres-

ent case. It is undoubtedly the law that if an obstruction is wrongfully placed between an abutting owner on a street and the street itself, so as to prevent access from the street to the owner's premises, such obstruction becomes a nuisance, and the owner of the premises is entitled to legal or equitable relief. As to what may or may not constitute a defense to an action for relief under such circumstances we will not attempt to determine in this opinion.

The judgment of the trial court is reversed, at respondent's cost.

CORFMAN, C. J., and FRICK, WEBER and GIDEON, JJ., concur.