## BASINGER v. STANDARD FURNITURE CO. et al.

No. 7418. Decided June 29, 1950. (220 P. 2d 117).

See, also, 25 Am. Jur. 656, and 63 C. J. S., Municipal Corporations, sec. 861.

*Dwight L. King,* Salt Lake City, *Wayne L. Black,* Salt Lake City, for appellant.

*Moreton, Christensen & Christensen,* Salt Lake City, *Homer Holmgren,* Salt Lake City, *Robert Spooner,* Salt Lake City, for respondents.

PRATT, Chief Justice.

This action was commenced by Ruth Marie Basinger, the appellant before this court, to recover for injuries sustained by her in a fall on a sidewalk in Salt Lake City. The trial court granted a nonsuit as to all parties defendant. This

appeal is from the judgment of nonsuit granted in favor of defendants Zion's Co-operative Mercantile Institution and Standard Furniture Company.

At the time of her injury the appellant was walking west on the sidewalk on the south side of South Temple Street. She was accompanied by four of her children, the youngest of which she was carrying in her arms. She testified that they were walking slowly; that as they came to the east side of the driveway which crosses the side walk to the rear of Z. C. M. I. and Standard Furniture Company, and alongside the Lois Greenwood shop, they hesitated to ascertain that no automobiles were coming out of or going into the alley, and then continued across the driveway. As she reached the west side of the driveway, she struck her right foot against a raised portion of the sidewalk which formed a ledge across the sidewalk from north to south. As Mrs. Basinger fell forward she threw her daughter, whom she was carrying, ahead and to the side, so as to not fall on her, and as she fell she caught her weight on her knees, hands, arms and shoulders. On this appeal it is unnecessary to go into the nature and extent of her injuries.

The evidence given on behalf of the plaintiff indicates that the driveway across the sidewalk was not used by defendant Lois Greenwood, nor by defendant Zion's Savings Bank and Trust Company. Plaintiff moved for a dismissal as to Lois Greenwood which motion was granted, and a motion for nonsuit made by counsel for Zion's Savings Bank and Trust Company was sustained. There is no appeal from these rulings.

Standard Furniture Company uses the driveway to unload merchandise from their warehouse to their retail store. Their ordinary practice was to carry only sample stock in their retail store, however, and for the most part deliveries to customers were made direct from the warehouse to the customer, rather than from the retail store to the customer.

They had two one and one half ton vans, and three smaller trucks. One of the ton and one half vans was used almost exclusively between the warehouse and the railroad. Other vehicles coming in and out used the driveway also when transacting business with Standard Furniture Company. The Z. C. M. I. Tea Room used the driveway to receive deliveries, and for garbage removal purposes. One witness fixed the number of trucks which would use the driveway as fifty such vehicles. We are not informed as to the ownership of the driveway, nor the terms of the use thereof, except that the respondents have used it many years, and claim the right to do so; nor are we informed as to whether other business houses besides the two respondents use the driveway.

Introduced in evidence as exhibits are three photographs of the sidewalk at the place where the fall occurred. From the photographs and the testimony, it appears that the driveway is constructed somewhat differently than the sidewalk to the west, and that there appears to be a ledge running north and south across the sidewalk where the driveway and the sidewalk west of it join. The sidewalk to the west appears to be somewhat higher than the driveway, although to the south, next to the building, the sidewalk and driveway appear to be substantially even and level. The point at which the appellant tripped appears to be the point at which the ledge is most pronounced. The sidewalk to the west appears to slant from the buildings toward the curb, whereas the driveway appears to dip somewhat. Evidence was introduced indicating that the off-set at the point where appellant tripped was about one and one-half inches.

Appellant's position is that there is substantial evidence that the respondents put the sidewalk to an unusual and extraordinary use which caused the defect from which appellant received her injuries.

Under the rules laid down by this court in the case of

*Ray v. Salt Lake City,* 92 Utah 412, 69 P. 2d 256, 119 A. L. R. 153, undoubtedly a jury question exists as to whether the defect in the sidewalk in the present instance would constitute a dangerous and unsafe condition. ■ Before appellant is entitled to have the jury consider this question however, it is first necessary that some duty, obligation or negligence on the part of the respondents, or either of them, be established rendering them liable for the injuries sustained by appellant.

In seeking to establish such state of facts, appellant cites us to the case *Salt Lake City v. Schubach,* 108 Utah 266, 159 P. 2d 149, 153, 160 A. L. R. 809, wherein it was said: "The ultimate liability is upon the author or continuer of the nuisance. When the owner installs such passageways, vaults or coal holes, it is presumably done for the benefit of his property. 'Neither the public or other individuals can derive any possible advantage from such a use of the sidewalk, but it is solely for the defendant's benefit, and he must see to it that he does not endanger the safety of others, and that he incommodes the public as little as possible'."

In the Shubach case there was involved a delivery chute built into the public sidewalk and covered with steel doors, which had become worn so that a person crossing them tripped and was injured. The delivery chute and doors had been constructed by the property owner with permission of the city several years earlier.

The distinction factually is, of course, obvious. The use in the Schubach case was a permissive use only, in derogation of the rights of the public, but within the permissible scope and authority of the city to grant or refuse such priviliged use as it saw fit, and as stated in the opinions in that case, the liability of the owner "sounds in implied contract," "that the owner, as a condition to the construction and maintenance of a door or chute through the sidewalk, impliedly agreed with the city to keep said door or chute in repair."

The right of access to the highway however, is in the nature of a special easement, which exists as a right of ownership of abutting land, and is a substantial property right which may not be taken away or impaired without just compensation, and is subject only to reasonable regulation. *Davis v. Midvale City,* 56 Utah 1, 189 P. 74; *Hague v. Juab County Mills, etc., Co.,* 37 Utah 290, 107 P. 249. It is apparent then, that the use of the sidewalk in the Schubach case rested on permission and assumption of the City's obligations in exchange; whereas the maintenance of a driveway into property exists as of right.

There exists no obligation on the part of an abutter to keep the sidewalk adjoining his premises in repair, nor is he liable for any state of disrepair. His obligation can only arise where he creates through use or otherwise some unsafe or dangerous condition. See *Daly v. Mathews,* ■ 49 Cal. App. 2d 545, 122 P. 2d 81.

There can be little question but that the condition of the sidewalk here had existed for a long time, and that no attempt by either respondent to repair or correct it had ever been made. A witness for plaintiff indicated that the driveway and the sidewalk west of it had not been level for the past 20 years at least. The same witness told of the sidewalk west of the driveway having been torn out and newly constructed in 1930 or 1931, and also that the driveway was level with the sidewalk east of the driveway. When asked directly as to the time when the west sidewalk was reconstructed in 1930 or 1931, and as to whether the west sidewalk was built a little higher than the driveway, he answered: "Yes, I recall that very markedly. There isn't a great deal of raise there but there is raise and it has always been there."

The facts adduced by the plaintiff fail to reveal that the ledge was created by reason of the vehicles crossing over the driveway and pressing it down, and in fact, most of

the vehicles using the driveway apparently were owned by persons other than the respondents. The evidence affirmatively shows a condition brought about by the reconstruction of the sidewalk west of the driveway wherein the city failed to establish the same grade for the sidewalk west of the driveway, as was already established for the driveway and the sidewalk east thereof.

The evidence fails to show that the respondents caused the ledge to occur, or that they had any obligation to correct it. Their use of the driveway was within their general right of use thereof. The defendants were not making any extraordinary use of the sidewalk, nor doing anything which was in derogation of the rights of the public. Certain cracks appear across the driveway—from east to west—but they, be their cause from use or weathering, are not probative of any negligent use by defendants. It follows, that the trial court was correct in his ruling granting a judgment of nonsuit as against the plaintiff.

Judgment of the lower court is affirmed. Costs to the respondent.

WADE, LATIMER, and McDONOUGH, JJ., concur.

WOLFE, Justice.

I concur in the results.

The record is devoid of any evidence that vehicles crossing over the sidewalk depressed the pavement in the driveway, thereby forming the ledge on which the plaintiff stumbled. On the contrary, one of the plaintiff's witnesses testified that when Salt Lake City reconstructed the sidewalk to the west of the driveway in 1930 or 1931, the sidewalk to the west of the driveway was built slightly higher than the pavement in the driveway. Thus it was proper for the trial court to nonsuit the plaintiff.

In view of the evidence, the question of whether an owner

of property abutting a sidewalk is liable to persons using the sidewalk because of breaks and cracks caused in the sidewalk by the continuous crossing of vehicles of the owner and his servitors in gaining entrance to and exit from the property is therefore not before us and I express no opinion as to it.