2007 UT App 89

**Cameron SMITH, Plaintiff and Appellant,**

v.

**BANK OF UTAH, INC.; and Phounsavath Phitsnoukanh, Defendant and Appellee.**

**No. 20050797–CA.**

Court of Appeals of Utah.

March 15, 2007.

J. Paul Stockdale, Ogden, for Appellant.

S. Baird Morgan, Michael K. Woolley, and Nathan S. Morris, Richard Brandt Miller & Nelson, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and THORNE.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiff Cameron Smith appeals a trial court order granting Defendant Bank of Utah, Inc.'s (the Bank) motion for summary judgment. On appeal, Smith argues the trial court erred in determining that the Bank did not owe him a duty of care. We affirm.

## BACKGROUND [1]

¶ 2 The Bank is located at 2605 Washington Boulevard in Ogden, Utah. Directly south of the Bank is the Bank's drive-thru teller exit. The Bank's drive-thru exit emerges onto a public sidewalk bordering Washington Boulevard. Abutting the Bank's drive thru-exit on the south side is another building (the Building). The north exterior wall of the Building runs parallel to the drive-thru exit, and the northeast corner of the Building is located at the junction of the exit and the public sidewalk. There is a stop sign located on the north side of the drive-thru exit where the exit meets the sidewalk. The parties do not dispute that the Building makes it difficult for traffic leaving the drive-thru exit and emerging across the sidewalk onto Washington Boulevard to see individuals traveling north along the sidewalk against the flow of street traffic.

¶ 3 On March 23, 2003, Smith was riding his bicycle north on the sidewalk bordering Washington Boulevard and running past the Building and the drive-thru exit. Smith was aware of the exit because he had ridden his bicycle past the exit three or four times prior to that day. As Smith rode past the Building

---

1. "In reviewing a grant of summary judgment, we ... view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Sanders v. Leavitt*, 2001 UT 78, ¶ 1 n. 1, 37 P.3d 1052. "We recite the facts accordingly." *Id.*

and crossed the part of the sidewalk in front of the drive-thru exit, Tanisha Phitsnoukanh (the Driver), emerged from the exit in her vehicle and struck Smith. The parties do not dispute that in leaving the exit and crossing the sidewalk, the Driver failed to stop at the stop sign or slow down her vehicle. The Driver was a bank patron who had used the drive-thru teller services at least once a month for the last year. She acknowledged that she typically stopped to look for pedestrians when leaving the exit.

¶ 4 Following the accident, Smith sued both the Driver and the Bank. Smith settled his claims against the Driver but continued to assert that the Bank was negligent in its design, monitoring, and control of its drive-thru exit. Smith claims the Bank owed him and other individuals who travel the public sidewalk in front of the drive-thru exit an affirmative duty of care to ensure that Bank patrons' use of the exit does not render the sidewalk unsafe.

¶ 5 The Bank moved for summary judgment, arguing that it did not owe Smith a duty of care as a matter of law. The trial court granted the Bank's motion. Smith appeals the grant of summary judgment.

### ISSUE AND STANDARD OF REVIEW

¶ 6 Smith argues the trial court erred in granting the Bank's motion for summary judgment. "Summary judgment is appropriate only where (1) 'there is no genuine issue as to any material fact' and (2) 'the moving party is entitled to a judgment as a matter of law.'" *Poteet v. White*, 2006 UT 63, ¶ 7, 147 P.3d 439 (quoting Utah R. Civ. P. 56(c)). Thus, "[w]e review the district court's decision to grant summary judgment 'for correctness, granting no deference to the [district] court.'" *Swan Creek Vill. Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 16, 134 P.3d 1122 (second alteration in original) (quoting *Pugh v. Draper City*, 2005 UT 12, ¶ 7, 114 P.3d 546).

### ANALYSIS

¶ 7 On appeal, we consider whether the Bank owed Smith, a passerby on the public sidewalk running in front of the drive-thru exit, an affirmative duty to ensure that its patron's use of the drive-thru exit did not render the sidewalk unsafe. In Utah, a plaintiff cannot recover on a negligence claim "without a showing of duty." *Lamarr v. Utah State Dep't of Transp.*, 828 P.2d 535, 537–38 (Utah Ct.App.1992). "'Duty is a question of whether the defendant is under any obligation for the benefit of a particular plaintiff....'" *Id.* at 538 (alteration in original) (quoting *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989)) (additional quotations and citation omitted). "Whether [the Bank] owed [Smith] a duty of care is entirely a question of law to be determined by the court." *Id.* (quotations and citation omitted). "'A court's conclusion that duty does or does not exist is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection.'" *Webb v. University of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906 (alteration in original) (quoting *University of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo.1987)) (additional quotations and citation omitted).

¶ 8 Generally, in Utah, "[t]here exists no obligation on the part of an abutter to keep the sidewalk adjoining his premises in repair, nor is he liable for any state of disrepair." *Tripp v. Granite Holding Co.*, 22 Utah 2d 175, 450 P.2d 99, 100 (1969) (quotations and citation omitted); *see also* 2–3 Jerome Nates, *Personal Injury* § 1.03[2][a] (2006) ("The owner or possessor of land abutting a public sidewalk does not, solely because of being an abutter, owe to the public a duty to maintain those public ways in a safe condition."). Utah courts, however, recognize a narrow exception to this no-duty rule "[w]hen an abutting landowner makes 'special use' of a public sidewalk." *Rose v. Provo City*, 2003 UT App 77, ¶ 12, 67 P.3d 1017; *see also Tripp*, 450 P.2d at 100 (stating that an abutting landowner's duty arises only when he "creates through use or otherwise some unsafe or dangerous condition" (quotations and citation omitted)); *Basinger v. Standard Furniture*, 118 Utah 121, 220 P.2d 117, 119 (1950); *Salt Lake City v. Schubach*, 108 Utah 266, 159 P.2d 149, 153 (1945) (noting that when a landowner "constructs a coal hole, or makes some other special use of the public

sidewalk, he undertakes to see that such structure is kept in proper condition so that no member of the public using such sidewalk is injured thereby"). Specifically, this court held in *Rose v. Provo City* that "[w]hen an abutting landowner makes 'special use' of a public sidewalk . . . he has a duty that runs with the land to use 'due care' to keep it in a 'suitable and safe' condition for the public to travel over." 2003 UT App 77 at ¶ 12, 67 P.3d 1017 (citation omitted). "An abutting landowner makes 'special use' of a public sidewalk . . . when he uses it for some other purpose than merely using [it] as a public sidewalk . . . , such as a driveway." *Id.* (second alteration in original) (additional quotations and citations omitted). In *Rose,* the defendant property owner left a ditch running the width of a planter strip uncovered, resulting in injuries to the plaintiff bicyclist who allegedly did not see the ditch and proceeded to ride his bike into it. *See id.* at ¶¶ 4–5. This court held that the defendant property owner had a duty to ensure that the planter strip specially used by the defendant as a driveway to its restaurant was in safe condition for public travel. *See id.* at ¶ 13; [2] *see also Basinger,* 220 P.2d at 117–18 (considering plaintiff's claims that her injury resulted from raised ledge on sidewalk allegedly resulting from defendant's special use of the public sidewalk as a driveway, but not

reaching the special use issue because plaintiff failed to establish defendant owed a duty when the evidence showed that the city, not defendants, created the uneven ledge).

¶ 9 But in this case, unlike other driveway special-use cases, the Bank did not actually create or maintain a physical condition or hazard on the sidewalk itself that rendered travel on the sidewalk unsafe.[3] On appeal, Smith essentially argues that the Bank's special use duty to keep the sidewalk in a safe and suitable condition arose not from a physical condition or defect on the sidewalk that the Bank created or maintained, but rather from a patron's negligent use of the sidewalk in driving over the sidewalk without stopping or slowing down.

¶ 10 Utah cases considering the special-use duty, however, are limited to instances where the special use of the sidewalk created a physical defect in the sidewalk itself. *See, e.g., Rose,* 2003 UT App 77 at ¶¶ 5, 11, 67 P.3d 1017; *Basinger,* 220 P.2d at 117–18; *Tripp,* 450 P.2d at 100. Furthermore, cases from other jurisdictions addressing the imposition of duty where an abutting public sidewalk is specially used as a driveway have also primarily concerned allegations of injury resulting from actual physical defects in the sidewalk itself. *See, e.g., Merriam v. Anacostia Nat'l Bank,* 247 F.2d 596,

**2.** In contrast to our holding in *Rose v. Provo City,* 2003 UT App 77, 67 P.3d 1017, the Oregon Court of Appeals in *Whitlow v. Jones,* 134 Or.App. 404, 895 P.2d 324 (1995), held that merely using the sidewalk as a driveway does not alone establish special use. *See id.* at 326–27; *see also Winston v. Hansell,* 160 Cal.App.2d 570, 325 P.2d 569, 573 (1958). Specifically, the *Whitlow* court determined that

> although a business establishment derives special advantage from the use of a sidewalk by its business invitees for ingress to and egress from the business, that use is not a special use for liability purposes, because it is customary and normal. For liability purposes, "specialness" is a function of novelty, not advantage.

895 P.2d at 326.

**3.** Nor does Smith allege that the Bank created an unsafe condition on the property itself. *Cf. Boudreaux v. Sonic Indus., Inc.,* 729 P.2d 514, 516–17 & n. 7 (Okla.Civ.App.1986) (noting that "the test for liability should not be some mechanistic rationale based on actual physical contact with the premises hazard[;] . . . [i]f a landowner uses

his property without regard to the traveling public, it is immaterial whether the injury is caused by physical contact or by another means," and citing various cases where landowner duty has been found, despite the dangerous condition to roadway not being created by an actual physical hazard on the roadway itself, including cases where sprinkler system on landowner's property and smoke from burning leaves on landowner's property created dangerous conditions to roadway travelers); *Stibley v. Zimmerman,* No. 97 CA 15, 1998 WL 548755, *8–9, 1998 Ohio App LEXIS 3988, at *23–24 (Ohio Ct.App. Aug. 26, 1998) (holding that a "business owner may breach its duty to provide a reasonably safe ingress and egress by placing objects that obstruct a patron's view of vehicular traffic and divert the patron's attention to pedestrian traffic"). *See generally* Restatement (Second) of Torts § 371 ("A possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place.").

597, 598 (D.C.Cir.1957) (discussing special duty in case where "[t]he dangerous condition of the sidewalk is alleged to have been created by trucks of the excavating subcontractor ... which used the sidewalk as a driveway, thus causing the break-up of the concrete surface"); *Sears, Roebuck & Co. v. Meyer,* 205 F.2d 321, 322–23 (9th Cir.1953) (sustaining plaintiff's recovery for injuries she incurred while crossing public sidewalk used by defendant as a driveway when injuries resulted from oily substance on driveway portion of sidewalk); *Barker v. Kroger Grocery & Baking Co.,* 107 F.2d 530, 532 (7th Cir.1939) (imposing duty on landowner where plaintiff's injuries resulted from a hole or crack in the abutting public sidewalk caused by heavy trucks passing over the sidewalk and destroying the pavement); *Adorno v. Carty,* 23 A.D.3d 590, 804 N.Y.S.2d 798, 798–99 (2005) (concluding that defendant landowner had a duty to keep sidewalk free from alleged physical defects causing the plaintiff's injuries where defendant specially used the public sidewalk as a driveway). Thus, we conclude that the special-use driveway duty does not apply here where Smith alleges that it was the Bank patron's negligent use of the sidewalk—i.e., failing to stop or slow down her vehicle as she entered the sidewalk—and not an actual physical defect the Bank created or maintained in the sidewalk itself that caused Smith's injuries.

¶ 11 We agree with the Bank that Smith's claim of duty essentially goes not to the condition of the sidewalk or the Bank property, but rather to whether the Bank had a duty to protect Smith from the negligent actions of a patron exiting across the sidewalk. It is well established in Utah that "[o]rdinarily, a party does not have an affirmative duty to care for another ... [and that t]he law imposes upon one party an affirmative duty to act only when certain special relationships exist between the parties." *Beach v. University of Utah,* 726 P.2d 413, 415 (Utah 1986) (addressing whether the university "breached [its] affirmative duty to supervise and protect" the plaintiff); *see also Webb v. University of Utah,* 2005 UT 80, ¶ 10, 125 P.3d 906 ("In almost every instance, an act carries with it a potential duty and resulting legal accountability for that act.

By contrast, an omission or failure to act can generally give rise to liability only in the presence of some external circumstance—a special relationship."). Special "'relationships generally arise when one assumes responsibility for another's safety or deprives another of his or her normal opportunities for self-protection.'" *Webb,* 2005 UT 80 at ¶ 10, 125 P.3d 906 (quoting *Beach,* 726 P.2d at 415). Examples of special relationships include the following: "common carrier to its passenger, innkeeper and guest, landowner and invitees to his land, and one who takes custody of another." *Id.* (citing Restatement (Second) of Torts § 314A (1965)).

¶ 12 Here, there is no special relationship between Smith and the Bank. Cases from other jurisdictions that have addressed the issue of special relationship under factual circumstances similar to those present here have uniformly held that no special relationship existed. For example, in *Ziemba v. Mierzwa,* 142 Ill.2d 42, 153 Ill.Dec. 259, 566 N.E.2d 1365 (1991), the Illinois Supreme Court addressed whether a defendant landowner owed a duty to a bicyclist traveling on a public roadway who was hit by a dump truck negligently exiting a driveway owned by the landowner, and concluded that no special relationship existed between the parties. *See id.* at 1365, 1367. The *Ziemba* court held that the condition on defendant's land "posed no danger to plaintiff, absent the driver[ ] violating his own standard of care[, and t]hus[,] imposition of a duty ... would require defendant to guard against the negligence of others[,] ... [which is] a considerably higher burden than guarding against dangers created solely by conditions on his land." *Id.* at 1369 (quotations omitted); *see also Gelbman v. Second Nat'l Bank of Warren,* 9 Ohio St.3d 77, 458 N.E.2d 1262, 1264 (1984) (considering whether restaurant owner had duty to driver hit by vehicle exiting restaurant's parking lot and holding that no special relationship existed between the parties and that a property owner has no duty to control "business invitees, who have left the owner's premises, have negligently entered a public thoroughfare outside the purview of the owner's control, and thereby negligently injured a third party"); *Pulka v. Edelman,*

40 N.Y.2d 781, 390 N.Y.S.2d 393, 358 N.E.2d 1019, 1021–22 (1976) (holding that parking garage owner had no special relationship to pedestrians passing by on sidewalk in front of garage exit and that garage had no duty to protect off-premise pedestrians from negligent conduct of patrons).

¶13 In sum, we conclude that the trial court did not err in determining that the Bank did not owe Smith a duty to protect him from the Driver's negligent use of the portion of the public sidewalk specially used by the Bank as a driveway entrance and exit to its drive-thru teller.

## CONCLUSION

¶14 We conclude that under the circumstances alleged here the Bank did not owe Smith a duty of care. We therefore affirm the trial court's grant of summary judgment.

¶15 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE Jr., Judges.