# WARD v. SALT LAKE CITY.

No. 2756.   Decided July 19, 1915.   Rehearing Denied August 5, 1915
(151 Pac. 905).

1. MUNICIPAL CORPORATIONS—TORTS—DEFECTS IN STREETS. Where a
municipal corporation, in the paving and guttering of streets,
and in constructing sidewalks and crosswalks, adopted and fol-
lowed a plan prepared by a competent civil engineer, it was not
liable for injuries to a pedestrian who stepped into a gutter
filled with water from rain, receiving a fall thereby, since
whether the municipality has followed a plan drawn by a com-
petent person for the making of public improvements is the
test of its liability.[1]   (Page 621.)

2. MUNICIPAL CORPORATIONS — TORTS — INJURIES TO PEDESTRIAN
FROM GUTTER—PROXIMATE CAUSE. Where a pedestrian, in cross-
ing a street deflected from the straight course, so that she stepped
into the uncovered part of defendant city's gutter, which was
filled to overflowing with a heavy rain, so as to conceal the fact
that such part was uncovered, the pedestrian's act in turning
aside, not the overflowing of the gutter, was the proximate cause
of the accident.   (Page 623.)

3. NEGLIGENCE—PLEADING. Under the code system of the state, a
pleader may allege in a single statement as many acts of negli-
gence relating to one transaction or accident as he may rely on,
and upon trial he need only prove one of the acts, if the act
proved is sufficient to entitle him to recover.   (Page 624.)

Appeal from District Court, Third District; Hon. *C. W.
Morse,* Judge.

Action by Amanda E. Ward against Salt Lake City.

Judgment for plaintiff.   Defendant appeals.

REVERSED, and cause remanded, with directions to grant new
trial.

*H. J. Dininny,* City Atty., *Aaron Myers* and *W. H. Fol-
land,* Asst. City Attys. for appellant.

*A. T. Sanford* and *G. M. Sullivan* for respondent.

[1]*Morris* v. *Salt Lake City,* 35 Utah 485, 486; 101 Pac. 373.

The following are the cases cited in appellant's brief, re-ferred to by the court in the opinion: *Lansing* v. *Toolan,* 37 Mich. 153; *Teager* v. *Flemingsburg,* 109 Ky. 746, 60 S. W. 718, 22 Ky. Law Rep. 1442, 53 L. R. A. 791, 95 Am. St. Rep. 400; *Gould* v. *Topeka,* 32 Kan 485, 4 Pac. 822, 49 Am. Rep. 496; *Watters* v. *Omaha,* 76 Neb. 855, 107 N. W. 1007, 110 N. W. 981, 14 Ann. Cas. 750; *Shippy* v. *Au Sable,* 65 Mich. 494, 32 N. W. 741; *Kemp* v. *Des Moines,* 125 Iowa, 640, 101 N. W. 474; *Breckman* v. *Covington,* 143 Ky. 444, 136 S. W. 865; *McCourt* v. *Covington,* 143 Ky. 484, 136 S. W. 910; *Kelsey* v. *New York,* 123 App. Div. 381, 107 N. Y. Supp. 1089; *Owen* v. *New York,* 141 App. Div. 217, 126 N. Y. Supp. 38; *Urqu-hart* v. *Ogdensburg,* 91 N. Y. 67, 43 Am. Rep. 91, note; *Monk* v. *New Utrecht,* 104 N. Y. 552, 11 N. E. 268; *Betts* v. *Glovers-ville,* 56 Hun. 639, 8 N. Y. Supp. 795; *Roach* v. *Ogdensburg,* 80 Hun. 467, 30 N. Y. Supp. 450; *Rhinelander* v. *Lockport,* 60 Hun. 582, 14 N. Y. Supp. 850; *Hoyt* v. *Danbury,* 69 Conn. 341, 37 Atl. 1051; *Augusta* v. *Little,* 115 Ga. 124, 41 S. E. 238; *Davis* v. *Jackson,* 61 Mich. 530, 28 N. W. 526; *McQueen* v. *Elkhart,* 14 Ind. App. 671, 43 N. E. 460; *Peru* v. *Brown,* 10 Ind. App. 597, 38 N. E. 223; *Welsh* v. *Rutland,* 56 Vt. 228, 48 Am. Rep. 762; *White* v. *Yazoo City,* 27 Miss. 357; *Healy* v. *Chicago,* 131 Ill. App. 183; *Johnston* v. *District of Colum-bia,* 118 U. S. 19, 6 Sup. Ct. 923, 30 L. Ed. 75; *Mills* v. *Brook-lyn,* 32 N. Y. 489.

FRICK, J.

The plaintiff recovered judgment against the defendant city for personal injuries sustained through the alleged negligence of the city in not maintaining the sidewalk and gutter on a certain street intersection in a reasonably safe condition. The city appeals from the judgment.

The evidence relating to the alleged negligence is brief and without conflict. To aid the reader to better understand the conditions of the gutter and sidewalk at the point of the acci-dent, and to make more clear just what the plaintiff claims, we append the following plat:

The plaintiff, in substance, testified that on the 1st day of March, 1914, at about 11 o'clock at night, and while it was raining rather hard, she left the theater on Third South street, which was located a block north and a little west from where the accident occurred; that from there she went west to Main street, thence south on Main to Fourth South street, thence east on the north side of said street to the middle of the block, at which point she turned south to cross that street in order to reach her home, which was immediately south on a side street running north and south; that when she reached the street car track in the center of Fourth South street running east and west she discovered that she could not cross to the south side of that street without getting her feet wet on account of the water in and near the south gutter on Fourth South street; that she then turned back to the north side of the street and walked down on that side to the west side of State street, and on reaching that point she crossed over on the west side of State street, and when she arrived at the point of the large arrow marked "b" on the plat she deflected to the west, as indicated by the curving of the arrow, and stepped into the gutter at the point marked "a" on the plat. She testified further that the gutter was overflowing with water at the time, so that she could not see where the covering over it ended. The gutter, she said, was 15 inches wide and

about 13 inches deep at the point marked "a" and where she stepped into it, and that the water ran over the iron plates covering the gutter and also over the sidewalk and over the street pavement. Stepping into the gutter caused the plaintiff to lose her balance and fall forward to the south onto the concrete sidewalk, and in falling she sustained the injuries complained of. It was made to appear from the testimony of the doctor, who at the time was in the Moxum Hotel, and who was called to attend to the plaintiff's injuries, that on the night of the accident, as he put it, "there was a heavy combined rain and snow going on that evening; I think it began about ten minutes after seven;" and it is conceded that the rain continued falling until about eleven o'clock, during which time about one-half of an inch of water fell, by reason of which the street in question was flooded.

Referring now to the plat again, the letters "g" "g" indicate the open portions of the gutters, which are constructed of concrete, and are of the width and depth before stated. The shaded portions marked "i" "i" are iron plates twenty feet in length covering the gutters "g" "g," and the portion marked "c" is a solid concrete covering over that portion of the gutter as indicated. The figure "26.5" and "26.8" constitute the width of the sidewalk, which is constructed of concrete or cement, and which extends from the building or lot line to the gutters "g" "g." The plaintiff thus had a safe passageway of 26.8 feet over which she could have passed safely at any point within that distance. She testified that the water was flowing over the iron plate, and thus she could not see where the plate ended, and thus in deflecting her course to the west, as indicated by the large arrow "b," she stepped into the gutter.

It is contended that the city was negligent in not having the gutter covered farther to the west so as to prevent pedestrians from stepping into it in case the gutter was flooded, and that it was also negligent in constructing the gutter in the form and depth it was constructed. On the part of the city it was shown without conflict just what the width of the concrete sidewalks were at the point in question as indicated on the plat; that the paving, the gutters, the covering thereon,

and the sidewalk were all constructed in accordance with a plan prepared and recommended by a competent civil engineer, which plan was duly adopted and followed by the city in improving its streets and in constructing the gutters, sidewalks, etc., including those in question here. The theory upon which the case was tried and submitted to the jury by the trial court is well illustrated by the following instruction to the jury:

"The court instructs you that it is the duty of the city to use reasonable care and diligence to install such crossings, curbs, and sidewalks as are reasonably safe for pedestrians using them, and use reasonable diligence to keep them reasonably safe, and it is for you to consider and determine whether the condition existing at the place of the injury was reasonably safe and secure for pedestrians using the street and in so determining you may take into consideration the location, whether or not it was at a point which was in or near the busy business section of the city, and whether it was at a point where a great many pedestrians used it, or a point where few used it, and, if you find from a preponderance of the evidence that the defendant city did not use such reasonable care and diligence, and that such failure was the proximate cause of plaintiff's injury, then your verdict should be for the plaintiff, unless you should find that she was guilty of contributory negligence as is herein defined."

It will thus be seen that the court submitted the whole question respecting the construction of the gutters and coverings thereon to the jury, and allowed them to determine what, in their judgment, would constitute proper gutters and a sufficient covering for them for pedestrians to pass over safely, although there was no allegation nor proof that the plan adopted by the city as aforesaid was insufficient or defective, or that it was negligently or defectively executed in any particular. The city excepted to the foregoing instruction, as well as to others based on the same theory, and in its brief urges that the court erred in submitting the case to the jury upon the theory outlined in the instruction we have set forth at large, or upon any theory, under the undisputed evidence.

It seems to us that under the undisputed evidence the ver-

dict and judgment cannot prevail. It has frequently been
held by the courts—indeed, so far as we are aware, there
is little, if any, diversity of opinion upon the proposi-          1
tion—that a municipality may adopt and follow a plan
prepared by a competent civil engineer in making public im-
provements, including the paving and guttering of streets and
in constructing sidewalks and cross-walks, and that the ques-
tion of whether such plans are sufficient or proper cannot be
reviewed by the courts, except upon the grounds pointed out by
us in the case of *Morris* v. *Salt Lake City*, 35 Utah, 485, 486,
101 Pac. 373, and cases there cited. A municipality, as a mat-
ter of course, is liable for a negligent execution of its plans, or
for permitting the improvements which are constructed in ac-
cordance therewith to be out of repair or to become unsafe.
It may, however, not be sued because some citizen, or many of
them for that matter, may think that the public improvement,
although constructed according to the plans adopted and fol-
lowed as aforesaid, are unsafe or could be improved. Where
public improvements are constructed in accordance with a
plan prepared and adopted as aforesaid, the city is liable only
in case the improvement, when constructed in accordance
with such plan, is clearly insufficient or unsafe. The rule
with respect to streets and sidewalks is stated by Mr. Chief
Justice Campbell in his usually clear style in *Shippy* v. *Vil-
lage of Au Sable*, 65 Mich. 500, 501, 32 N. W. 744, in the fol-
lowing words:

"All municipal ways must be put under the supervision of the pub-
lic authorities. It is for them to decide what works shall be under-
taken, and how the general safety and convenience require them to
be built. There must be some final arbiter as to the proper way
of doing this. In many cases plans more or less formal must be
considered, and taxes or assessments levied to complete them. If it
can be referred to a jury to determine on the propriety of such action,
there will be as many views as there are juries, and it can never be
definitely known when a municipality is safe. It is beyond human
ingenuity to devise a plan which is not capable of danger to heedless
persons, or to young children, who cannot be expected to appreciate
the danger. Reasonable safety is what the law requires, and no
more."

The principle stated by the Chief Justice is followed by the Supreme Court of Nebraska in *Walters* v. *City of Omaha,* 76 Neb. 855, 107 N. W. 1007, 110 N. W. 981, 14 Ann. Cas. 750. In that case it was made to appear that the board of public works of Omaha had adopted the plans of competent engineers, and had constructed the improvement in accordance therewith. The court, at page 857 of 76 Neb., at page 1008 of 107 N. W. (14 Ann. Cas. 750), says:

"When that course has been pursued in good faith, and the work has been carried on and completed as planned and specified, the municipality should not be held responsible, unless the structure is so manifestly dangerous that all reasonable minds must agree that it is unsafe."

A large number of cases in which the foregoing principles are illustrated and applied by the courts are cited in appellant's brief, all of which will be found in the reporter's citations which precede this opinion, and we shall, therefore, not specially refer to the cases here. It has also been held by numerous decisions that under the conceded facts here the city was not guilty of negligence. In *Canavan* v. *Oil City,* 183 Pa. 611, 38 Atl. 1096, in passing on a similar question, it is said:

"A municipality is not liable for personal injuries caused by a fall into an uncovered gutter at a street crossing, where it appears that the gutter was reasonably safe, and that the open gutter is a common, approved method of construction at crossings in cities and boroughs."

The cases of *Brantz* v. *Fargo,* 19 N. D. 538, 125 N. W. 1042; 27 L. R. A. (N. S.) 1169; *Town of Spencer* v. *Mayfield,* 43 Ind. App. 134, 85 N. E. 23; *Gallagher* v. *City of Tipton,* 133 Mo. 557, 113 S. W. 674; *Hays* v. *City of Columbia,* 159 Mo. 431, 141 S. W. 3; *Rome* v. *Cheney,* 114 Ga. 194, 39 S. E. 933, 55 L. R. A. 221, and *Lansing* v. *Toolan,* 37 Mich. 153, are all directly in point. In a number of those cases the width of the sidewalks and gutter coverings are given, and in some instances were much less than one-fourth of the width of the coverings in question, and yet it was held as a matter of law that, where it was shown without conflict that the walk, gutters, and coverings were constructed in accordance with an ap-

proved and adopted plan, the municipality was not guilty of negligence either in constructing or in maintaining them. It is needless to cite further authorities upon a proposition which, to our minds, admits of no controversy in the light of the conceded facts. Here the plaintiff had a safe passageway at least 26 feet in width. She herself testified that the gutter was covered over with iron plates up to a point which was even with the outer wall of the Moxum Hotel Building. How much farther should the city have covered the gutter? If such matters shall be left to juries, one might say five, another ten, and still another twenty feet. At all events, one jury, the jury in question, said that walk or crossing of. twenty-six feet in width was insufficient. Who can say, therefore, what number of feet would be sufficient? The verdict, however, plainly shows that when juries are permitted to depart from the plans which have been approved by competent civil engineers the whole matter with them becomes one largely of caprice or conjecture. The question, therefore, is not one of feet, but it is whether the improvement has been constructed according to a plan which was prepared by a competent civil engineer who is skilled and conversant with what is reasonably sufficient and necessary in such matters, and whether the plan was followed. Where such is the case, the law assumes that the plan is a proper and reasonable one, and that the structure which conforms to the plans and specifications is reasonably safe until the contrary is clearly made to appear. This is but common sense.

It is also contended in appellant's brief that the overflowing of the water in the gutter was not the proximate cause of the accident. It seems to us this contention is well taken. We cannot see how the overflowing of the gutter caused the plaintiff to deflect from the sidewalk or crossing and step into the gutter. Of course, she says the water concealed the end of the iron plates covering the gutter; but she also says that the water ran all over the street paving at the point in question. The same condition, therefore, prevailed both to the east and to the west of where she was crossing. How then did the water cause her injury? If the overflow of the water had in some way flooded plaintiff's

premises and had caused her damages, we could understand how the flooding, if due to the city's negligence, might be considered the direct, the proximate, cause of the damages complained of. We cannot perceive, however, how the overflow caused the accident and consequent injury. Certainly, the water did not cause plaintiff's injury. If snow had drifted into the gutter, or if for any other reason the end of the iron plates had been concealed from her view, the claim, no doubt, would then be that those things were the proximate cause of the accident. The proximate cause of the accident was plaintiff's own conduct in departing from a straight course and stepping into the uncovered gutter. Can it be said that where there is a safe path of twenty-six feet in width provided for the pedestrian that he may wander off to either side simply because a rainstorm has produced a temporary flood over the path, and that he may step into a gutter at the side of the path, and then complain that the path is of insufficient width?

Another assignment relates to the manner in which the acts of negligence are stated in the complaint. It is argued by the city that, inasmuch as the plaintiff had commingled several acts of negligence in a single statement or cause **3** of action, and had failed to prove all of the acts as alleged, therefore the court erred in submitting the case to the jury, for the reason that the plaintiff had failed to prove a cause of action. There is nothing in this contention. It is well settled in this jurisdiction, and we think in all others having a code system, that a pleader may allege as many acts of negligence as he may rely on in a single statement and upon the trial he need only prove one or more of the acts if the act proved is sufficient to entitled him to recover. Of course, the several acts of negligence contemplated in the foregoing statement must relate to one transaction or accident. If they do not, they should be pleaded as distinct causes of action. A single accident, however, may be the culmination or result of a number of negligent acts or omissions or both, and when such is the case the several acts or omissions, as the case may be, which are alleged to constitute the negligence complained of, may all be included in a single cause of action or statement, and only so much of the charged

negligence need be proved as will entitle the ¡ plaintiff to recover.

It is also insisted by the city that the notice required by our statute, and which was served in this case, is insufficient. We think that under the circumstances disclosed by the record the notice in question is clearly sufficient, and that question, therefore, requires no further discussion.

For the reasons stated, the judgment is reversed, and the cause is remanded to the District Court of Salt Lake County, with directions to grant a new trial, and to proceed with the case in accordance with the views herein expressed; appellant to recover costs on appeal.

STRAUP, C. J., and McCARTY, J., concur.