265 P.2d 401

## SMITH v. BENNETT.

No. 7972.

Supreme Court of Utah.

Dec. 22, 1953.

· Stewart, Cannon & Hanson, Ernest F. · Baldwin, Jr., Rex J. Hanson, Don J. Hanson and Edward M. Garrett, Salt Lake City, for respondent.

WOLFE, Chief Justice.

Action to recover damages for personal injuries sustained by appellant, plaintiff below, Henrietta Smith, a pedestrian, allegedly caused by the negligence of respondent automobile driver, defendant below. At the conclusion of the evidence, defendant made a motion for a directed verdict which was granted upon the ground that plaintiff was contributorily negligent as a matter of law. The question presented is whether the trial court erred in directing a verdict for defendant. Would all reasonable men conclude from the evidence that plaintiff was negligent and that her negligence was a proximate cause of her injuries?

█ The evidence and all reasonable inferences therefrom will be viewed in a light most favorable to plaintiff. Cox v. Thompson, Utah, 254 P.2d 1047.

On October 17, 1951, plaintiff was employed by the Western Co-op, located on the north side of Second South Street between 8th and 9th West in Salt Lake City, Utah. (See diagram.)

W. D. Beatie, Salt Lake City, for appellant.

Commencing at a point directly in front of Western Co-op is a marked pedestrian lane, running in a northeasterly and southwesterly direction across Second South Street, the lane being approximately 267 feet from the intersection of Second South Street with 9th West Street and 792 feet from the intersection of Second South Street with 8th West Street.

At the time of the accident, shortly after 6:00 p. m. on October 17, 1951, it was dusk, but the street lights and the lights on defendant's automobile were burning. The street was dry.

Plaintiff's residence was situated a short distance east and on the opposite (south) side of Second South Street which runs east and west. At this location that street is 60 feet wide, divided into four 10 foot traffic lanes, two for eastbound and two for westbound traffic, with an 8 foot parking lane along each edge of the street. A center strip 4 feet wide separates eastbound and westbound traffic.

Just before the accident, plaintiff finished her work at Western Co-op and was proceeding to her home on the south side of Second South Street. On the north curb, she observed traffic approaching from the east, concluded that she had time to cross, and proceeded to the center of Second South Street, keeping within the bounds of the marked pedestrian lane. At this point she looked west, saw a car approaching over a block away, and then walked east up the middle of Second South Street to a point 45 feet east of the pedestrian lane. There she stopped (see point S2 on diagram), looked west, saw no cars approaching, and "walked rather quickly" towards her home.

She was struck by the left front fender of defendant's automobile at a point 13 feet south of the south double lines in the center of the street. (See point X on diagram.) The automobile came to rest 3 feet east of the point of impact and approximately on the dividing line between the two lanes for eastbound traffic. The physical evidence indicates that at the point of impact, defendant was traveling at a speed of approximately one mile per hour.

Defendant testified that he was traveling east on Second South Street in the outside lane which is designated lane No. 1 in the diagram; that he first observed plaintiff walking east at point S1 and at that particular moment his automobile was approximately 120–145 feet from the point of impact (see point "a" on diagram), traveling at a speed of approximately 25 miles per hour; that after traveling 10–15 feet he honked his horn and slightly reduced his speed; that plaintiff stopped at point S2 as if to yield the right of way; that when his automobile was approximately 25–30 feet from the point of impact (see point "b" on diagram), plaintiff suddenly ran from her position of safety into the path of defendant's automobile; and that he immediately applied his brakes in an attempt to avoid the accident.

■ Except for the proximity of defendant's automobile, the physical facts supporting defendant's version, there was no substantial conflict in the testimony of plaintiff and defendant, and several independent witnesses confirmed the facts presented. However, there was some conflicting testimony as to the speed of defendant's automobile (varying from 25–30 miles per hour, "maybe a little faster; not much."), the existence of brake marks, and whether defendant sounded his horn. Resolving these conflicts in a light most favorable to plaintiff cannot interfere with the inescapable conclusion that plaintiff was guilty of contributory negligence which was a proximate cause of the accident.

Utah Code Ann. 1953, 41–6–79 provides:

"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an un-

marked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

Plaintiff chose to leave her preferred position as a pedestrian within a marked crosswalk and proceeded to walk down the center of a heavily traveled street. She placed herself in a position of peril. Sant v. Miller, 115 Utah 559, 206 P.2d 719. By attempting to cross the street in disregard of safety rules, she was charged with a high standard of care, the duty being commensurate with the perilous circumstances. All reasonable men must conclude that plaintiff by her conduct did not discharge the duty placed upon her. In Mingus v. Olsson, 114 Utah 505, 201 P.2d 495, 498, it was assumed that decedent was in a crosswalk at the time he was struck by defendant's automobile. Nonetheless, we held that decedent was contributorily negligent as a matter of law since he failed to keep a proper lookout for approaching traffic. We said:

"A pedestrian crossing a public street in a crosswalk or pedestrian lane, although he may have the right of way over vehicular traffic, nonetheless has the duty to observe for such traffic. Clearly, decedent neglected that duty in this case. It follows that he was contributorily negligent as a matter of law. Of course we do not mean to imply that a mere glance in the direction of the approaching automobile would

suffice. The duty to look has inherent in it the duty to see what is there to be seen, and to pay heed to it."

In the recent case of Cox v. Thompson, Utah, 254 P.2d 1047, 1051, we held as follows:

"Crossing a highway at a point where there was no marked cross walk, decedent was duty bound to yield the right of way to a vehicle upon the roadway. * * * This he failed to do. He, in addition, apparently failed to look, or having looked failed to see what he should have seen and paid heed to it. He said nothing and did nothing which indicated he was in any way aware of the danger presented. Decedent was properly found negligent as a matter of law."

In the present case, plaintiff stated that she looked for approaching traffic before leaving the center of Second South Street. She testified as follows:

"I saw parked cars west of 9th West * * *. There wasn't anything between 9th West and where I was."

Plaintiff's failure to see and yield the right of way to defendant's automobile only a few feet away in a position of immediate danger constitutes contributory negligence which caused her injuries. Sant v. Miller, 115 Utah 559, 206 P.2d 719; Mingus v. Olsson, supra; Reid v. Owens, 98 Utah 50, 93 P.2d 680, 126 A.L.R. 55,

Plaintiff cites a series of cases illustrated by Martin v. Stevens, Utah, 243 P.2d 747; Lowder v. Holley, Utah, 233 P.2d 350; Poulsen v. Manness, Utah, 241 P.2d 152, in which the questions of contributory negligence and proximate cause were held to be jury questions. A major dissimilarity exists between the facts of the case now before the court and plaintiff's authorities. In these cases we were concerned with situations such as intersectional accidents where the plaintiff's attention was demanded in more than one direction or in more than one place. Since his attention could not be in all places and in all directions at once, it was a question of human judgment as to how his attention should be distributed among the several competing demands. A question of fact for the jury was presented as to whether his distribution of attention was reasonable. In the instant case there was but one demand upon plaintiff's attention. There is no room for a reasonable difference of opinion as to where her attention should have been concentrated; it was incumbent upon her to observe the condition of approaching traffic. That she failed to use due care in doing so is manifest from the evidence.

The judgment below is affirmed. Costs to the respondent.

McDONOUGH, CROCKETT, HENRIOD, and WADE, JJ., concur.