2003 UT App 77

**Claude Theadore ROSE, Plaintiff and Appellant,**

v.

**PROVO CITY, a political subdivision of the State of Utah; Elmer and Georgina Barrientos; Edward S. Hunt; Araceli V. Hunt; John and Jane Does I through X; and XYZ entities, Defendants and Appellees.**

No. 20010168–CA.

Court of Appeals of Utah.

March 20, 2003.

Mark T. Flickinger, Kathleen S. Phinney and Kevin J. Sutterfield, Flickinger & Sutterfield, PC, Provo, for Appellant.

David C. Dixon, Provo City Attorney's Office, and Edward W. McBride Jr. and Donald J. Purser, Salt Lake City, for Appellees.

Before Judges DAVIS, GREENWOOD, and THORNE.

## OPINION

DAVIS, Judge:

¶ 1 Claude Theodore Rose (Rose) appeals from directed verdicts in favor of Elmer and Georgina Barrientos (collectively the Barrientoses) and Provo City (the City). We reverse and remand.

### BACKGROUND [1]

¶ 2 The Barrientoses own a restaurant in Provo City, including the parking lot next to the restaurant. The City owns a sidewalk that borders the parking lot and owns the area between the sidewalk and the street (the planter strip).

¶ 3 Before the Barrientoses purchased the restaurant, the planter strip was asphalted to the street. At trial, Elmer Barrientos testified that "everyone" uses the planter strip as a driveway to the street although the City has not issued a driveway permit and the planter strip does not comply with Provo City driveway specifications. The Barrientoses indicated that they sweep and remove snow from the area. A second driveway, recognized by the City as a proper driveway, also provides access to the restaurant parking lot.

¶ 4 A City-owned ditch runs almost the entire width of the end of the asphalted planter strip. When the Barrientoses purchased the restaurant, a pipe covered the ditch. At trial, Elmer Barrientos testified that between 1989 and the date of Rose's injuries in 1995, the City removed the pipe twice. The first time the City removed the

---

1. "In reviewing a trial court's [decision to grant] motions for a directed verdict[,] ... this court reviews the evidence in the light most favorable to the non-moving party and ... afford[s] him the benefit of all inferences which the evidence fairly supports." *Kilpack v. Wignall,* 604 P.2d 462, 463 (Utah 1979) (quotations and citation omitted).

pipe, Elmer Barrientos replaced it. The second time, Elmer Barrientos called the City. Thereafter, the Barrientoses continued to use the asphalted planter strip as a driveway although the ditch remained uncovered.

¶ 5 In August 1995, Rose and his wife rode their bikes through the restaurant parking lot. At trial, Rose testified that although he had previously patronized the Barrientoses' restaurant, he had not ridden through the "back" part of the parking lot. Rose further testified that he proceeded slightly ahead of his wife through the lot at about ten miles per hour. Rose and his wife testified that as they egressed from the parking lot, the asphalted planter strip appeared to be a driveway that ran straight into the road. At trial, the parties offered photo exhibits that, depending on the camera angle, either contradicted or supported Rose's position. Rose testified that when he approached the sidewalk between the parking lot and the asphalted planter strip, he looked left around a "blind" corner for traffic. Rose's wife testified that as Rose was crossing the sidewalk, she yelled, "Watch out!" Rose testified that he believed a car was coming and continued to look left for cars. He testified that he did not recall seeing the ditch and he did not apply his brakes. Although Rose's wife testified that she was able to turn her bike and stop without riding into the ditch, Rose rode into the ditch and was injured.

¶ 6 Rose filed a negligence action against the Barrientoses and the City. After Rose presented his case, the trial court granted directed verdicts for the Barrientoses and the City. The trial court ruled the evidence did not establish that either the Barrientoses or the City breached "any duty" to Rose. Rose appeals the directed verdicts.

## ANALYSIS

¶ 7 Rose maintains the trial court erred by concluding that the evidence was not sufficient to establish that either the Barrientoses or the City breached "any duty" to Rose and erred by granting directed verdicts for the Barrientoses and the City. Whether the evidence at trial was sufficient to preclude directed verdicts for the Barrientoses and the City is a question of law that we review for correctness. *See, e.g., Mahmood v. Ross*, 1999 UT 104,¶ 16, 990 P.2d 933. "A plaintiff must present sufficient evidence to establish a prima facie case [of negligence] ... to have his cause submitted for consideration by the jury. If [the] plaintiff fails to do so, [the] defendant is entitled to have the verdict directed in his favor." *Lindsay v. Gibbons & Reed*, 27 Utah 2d 419, 497 P.2d 28, 30 (1972). "If reasonable persons could reach differing conclusions on [an] issue in controversy," or the evidence raises a question of material fact, "a jury question exists and the motion [for a directed verdict] should be denied." *Kilpack v. Wignall*, 604 P.2d 462, 463 (Utah 1979) (quotations and citation omitted). To establish negligence, a plaintiff must show: "the defendant owed the plaintiff a duty, [the] defendant breached the duty (negligence), the breach of the duty was the proximate cause of [the] plaintiff's injury, and there was in fact injury." *Lamarr v. Utah State Dep't of Transp.*, 828 P.2d 535, 537 (Utah Ct.App.1992).

¶ 8 The first issue in the present case is whether Rose established that he was owed a duty. *See AMS Salt Indus., Inc. v. Magnesium Corp. of Am.*, 942 P.2d 315, 320 (Utah 1997) ("Absent a showing of duty, [the plaintiff] cannot recover." (alteration in original)). A duty is " 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' " *Id.* at 320–21 (citation omitted). Generally, whether a duty of care is owed is " 'entirely a question of law to be determined by the court.' " *Lamarr*, 828 P.2d at 538 (quoting *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989)); *see AMS Salt Indus., Inc.*, 942 P.2d at 320 ("[I]f ... reasonable minds could not differ as to the conclusion to draw from the evidence or that the evidence adduced was simply insufficient to sustain the legal claim, then the trial court should rule on the issue as a matter of law.").

[5, 6] ¶ 9 If Rose was owed a duty, the second issue is whether Rose presented sufficient evidence upon which a jury could find that the required standard of care was breached. "Whether a defendant has breached the required standard of care is

generally a question for the jury, to be determined by whether the injury which occurred was of the type that fell within the zone of risk created by the defendant's negligent conduct." *Williams v. Melby*, 699 P.2d 723, 727 (Utah 1985) (citation omitted). "The care to be exercised in any particular case depends upon the circumstances of that case and on the extent of foreseeable danger involved...." *Id.* (quotations and citation omitted).

¶ 10 Finally, given ambiguity in the trial court's ruling, we consider whether Rose presented sufficient evidence that any negligence by the Barrientoses or the City was the proximate cause of his injuries. Proximate cause is ordinarily a question of fact for the jury. *See Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 487 (Utah Ct. App.1991), *aff'd*, 862 P.2d 1342 (Utah 1993).

### I. Duty and Breach of Duty by the Barrientoses

¶ 11 Rose argues the evidence presented at trial was sufficient to establish that the Barrientoses had a duty and to raise material issues of fact as to whether the Barrientoses negligently maintained the asphalted planter strip as a business driveway, after the City removed a pipe, leaving an uncovered ditch that extended almost the entire width of the planter strip.[2]

¶ 12 When an abutting landowner makes "special use" of a public sidewalk, or as in the present case, a planter strip, he has a duty that runs with the land to use "due care" to keep it in a "suitable and safe" condition for the public to travel over. *Salt Lake City v. Schubach*, 108 Utah 266, 159 P.2d 149, 153 (1945); *see Conrad v. Walker Bank & Trust Co.*, 542 P.2d 1090, 1090 (Utah 1975) ("By utilizing [and maintaining] the area between the street and sidewalk" an owner of land abutting a public way becomes "charged with a duty to do so in a nonnegligent manner the same as if [he] ... owned the land."); *Tripp v. Granite Holding Co.*, 22 Utah 2d 175, 450 P.2d 99, 100 (1969) (noting

an abutting landowner's obligation to keep sidewalk adjoining premises in repair " 'can only arise where he creates through use or otherwise some unsafe or dangerous condition' " (citation omitted)). An abutting landowner makes "special use" of a public sidewalk or a planter strip, when he uses it " 'for some other purpose than merely using [it] as a public sidewalk [or a planter strip], such as a driveway.' " *Dorlon v. City of Springfield*, 843 S.W.2d 934, 945 (Mo.Ct.App.1992) (quoting *Rauh v. Interco, Inc.*, 702 S.W.2d 497, 501 (Mo.Ct.App.1985)); *accord Wylie v. New York*, 286 A.D. 720, 146 N.Y.S.2d 207, 209 (N.Y.App.Div.1955).

¶ 13 At trial, Elmer Barrientos testified that when he began working at the restaurant, the planter strip was already asphalted. Although it is unclear who asphalted the planter strip, no driveway permit had been issued and the planter strip did not comply with Provo City driveway specifications. Elmer Barrientos further testified that "everyone" used the planter strip as a driveway to the restaurant. The Barrientoses indicated that they maintained the planter strip by sweeping it and removing snow. We conclude this evidence was sufficient to establish that the Barrientoses specially used the asphalted planter strip and therefore had a duty to maintain it in a suitable and safe condition for ingress and egress by foreseeable travelers.

¶ 14 The Barrientoses argue they had no duty to Rose because the unsafe condition was not the planter strip, but was the uncovered ditch in the gutter and Provo, Utah, City Ordinances § 15.10.090 (1995) provided the City with the "sole prerogative" "to determine the necessity and the extent of the construction, extraordinary repairs, or replacements" of defective sidewalks, curbs, and gutters. Although this ordinance provided the City with the "sole prerogative" to determine the necessity of such repairs, the ordinance did not relieve the Barrientoses'

---

2. Rose also claims that the Barrientoses are strictly liable for unlawfully creating a hazardous condition in the street. *See* Utah Code Ann. § 76–10–803 (1999); *Erickson v. Sorensen*, 877 P.2d 144 (Utah Ct.App.1994). However, this claim was not raised below; therefore, we do not consider it. *See Shayne v. Stanley & Sons, Inc.*, 605 P.2d 775, 776 (Utah 1980).

duty with respect to foreseeable travelers using the asphalted planter strip.

¶ 15 We also conclude Rose presented sufficient evidence to raise an issue of material fact as to whether the Barrientoses failed to exercise due care[3] by maintaining an unsafe condition—a driveway into an uncovered ditch. Contrary to the Barrientoses' assertion that Rose presented no evidence of an unsafe condition[4] or that they had knowledge of such a condition, Rose and his wife testified that as they egressed from the restaurant parking lot, the asphalted planter strip appeared to be a driveway that ran straight into the road. Although in some of the photo exhibits the ditch is apparent, in others the asphalted planter strip appears to run straight into the road. Further, Elmer Barrientos acknowledged that the area was not safe. After the first time the City removed the pipe from the ditch, he replaced it. The second time the City removed the pipe, he called the City. Although the Barrientoses testified that they were unaware of any injuries to other travelers egressing via the driveway, "[t]he mere fact that a particular kind of accident has not happened before does not ... show that such accident is one which might not reasonably have been anticipated." *Williams v. Melby*, 699 P.2d 723, 728 (Utah 1985) (quotations and citations omitted). Elmer Barrientos' testimony suggests that children ride bicycles in the area.

Moreover, testimony indicated that the asphalted planter strip was an alternate exit from the restaurant, and other than calling the City, the Barrientoses took no action in regard to the planter strip after the City removed the pipe a second time.

¶ 16 Because Rose presented sufficient evidence to allow a jury to find that the Barrientoses failed to exercise due care by maintaining a business driveway so situated, *cf. Keith v. Beard*, 219 Ga.App. 190, 464 S.E.2d 633, 637 (1995) (concluding jury question existed as to whether landowner negligently maintained "unpermitted" business driveway where landowner had notice of sight distance problem), we conclude the trial court erred by directing a verdict for the Barrientoses.

## II. Duty and Breach of Duty by the City

¶ 17 Rose next claims the trial court erred by granting a directed verdict for the City as the evidence presented at trial was sufficient to raise material issues of fact as to whether the City breached its nondelegable duty to maintain the asphalted planter strip and negligently removed the pipe, leaving an uncovered ditch at the end of a business driveway.

¶ 18 " '[I]t has long been the law in Utah ... that a [city] has a duty to exercise ordinary care to keep streets which it has opened for travel and which it has invited the public to use in a reasonably safe

---

**3.** At trial, Rose claimed that he was a business invitee. However, while Rose was riding through the Barrientoses' parking lot, he was at best a licensee, *see Stevens v. Salt Lake County*, 25 Utah 2d 168, 478 P.2d 496, 498–99 (1970), and was arguably a trespasser. *See Schulz v. Quintana*, 576 P.2d 855, 856 (Utah 1978). On appeal it is not clear what Rose claims the governing standard of care is and whether he is claiming that his status changed after he left the Barrientoses' parking lot. Accordingly, for purposes of our analysis and without binding the trial court on remand, we apply the standard owed by landowners who make "special use" of abutting public land, which is a duty of "due care" to keep such land in a "suitable and safe condition" for travelers. *Salt Lake City v. Schubach*, 108 Utah 266, 159 P.2d 149, 153 (1945) (noting that when an abutting landowner makes "special use" of a public sidewalk, he has a continuing duty that runs with the land to use "due care" to keep it in a "suitable and safe" condition for the public to travel over); *see also Schulz*, 576 P.2d at 856 ("Once a [street] has

been established there is an obligation upon the occupiers of abutting land to use ordinary care to see that the passage way is reasonably safe for travel."); *McKinley v. Fanning*, 100 Idaho 189, 595 P.2d 1084, 1086 (1979) (noting that "panoply of rules concerning the landowner's duties to persons on the property and the classification of those persons, such as trespassers, invitees, [and] licensees" were inapposite where injury was sustained due to dangerous condition on public sidewalk rather than on business premises) (citing *Tripp v. Granite Holding Co.*, 22 Utah 2d 175, 450 P.2d 99 (1969)).

**4.** The Barrientoses argue the ditch was an "open and obvious condition." We have previously noted that "the open and obvious danger rule is fundamentally incompatible with [Utah's] comparative negligence scheme." *Donahue v. Durfee*, 780 P.2d 1275, 1279 (Utah Ct.App.1989) (concluding plaintiff was entitled to have jury assess his negligence against that of defendant's in allowing dangerous condition to exist).

condition for travel.'" *Braithwaite v. West Valley City Corp.,* 921 P.2d 997, 998 (Utah 1996) (quoting *Braithwaite v. West Valley City Corp.,* 860 P.2d 336, 338 (Utah 1993)). This rule "is most frequently applied to accidents on city sidewalks, but also applies to [city] ways." *Pollari v. Salt Lake City,* 111 Utah 25, 176 P.2d 111, 116 (1947) (quotations and citations omitted). A city's duty to maintain such ways is nondelegable. *See, e.g., Murray v. Ogden City Corp.,* 548 P.2d 896, 897 (Utah 1976).

¶ 19 Rose relies on *Ingram v. Salt Lake City,* 733 P.2d 126 (Utah 1987), in arguing that the City had a nondelegable duty to monitor the Barrientoses' use of the asphalted planter area. In *Ingram,* the Utah Supreme Court noted that "[s]treets from side to side, including the sidewalks and all area between, are primarily for the public use." *Id.* at 127. The court further noted that "[t]he [planter strips] are part of the public streets designed for the use of the public." *Id.* However, at issue in *Ingram* was whether the Governmental Immunity Act provided Salt Lake City with immunity from suit by a plaintiff injured by a defective manhole cover in a planter strip. *See id.* The Governmental Immunity Act "does not create any liability where none would have theretofore existed." *Stevens v. Salt Lake County,* 25 Utah 2d 168, 478 P.2d 496, 499 (1970). Although the supreme court did not determine whether cities have a duty to monitor planter strips, *Ingram* suggests that cities have some duty with respect to users of planter strips.[5] *See Ingram,* 733 P.2d at 127; *see also Kling v. City of Austin,* 62 S.W.2d 689, 690–91 (Tex.Civ.App.1933) (noting that city could "refuse to construct or allow a driveway at any point where requisites of safety would not admit" in concluding city had a duty to maintain planter strip used as business driveway "in [the same] reasonably safe condition as applied to other portions of the public street").

¶ 20 The City argues the issue here is not the maintenance of the planter strip, but the maintenance of a ditch and it had no duty to maintain a ditch for bicyclists. Although decided before our present comparative negligence scheme was enacted, *Ward v. Salt Lake City,* 46 Utah 616, 151 P. 905 (1915) is instructive. In *Ward,* the Utah Supreme Court noted that a city "is not liable for personal injuries caused by a fall into an uncovered gutter at a street crossing, where it appears that the gutter was reasonably safe, and that the open gutter is a common, approved method of construction at crossings in cities." 151 P. at 907 (quotations and citation omitted). In the present case, the jury could find from some of the photo exhibits that a ditch, at the end of what appears to be a driveway, was not reasonably safe for foreseeable travel to the public street.

¶ 21 The City further argues that it had no duty to a bicyclist who entered the street from private property over a ditch. A city "responsible for safe condition of [the street] is ordinarily not bound to remedy conditions existing on [adjacent] private lands." *Stevens,* 478 P.2d at 499 n. 12. "It would place a wholly impractical burden upon [cities] if they had to assume the duty of correcting such conditions with respect to every private way that enters upon a public road." *Id.* at 499. We recognize that the ditch in isolation is not defective; but the ditch does not exist in isolation. There are "some circumstances where a public road is so positioned and/or maintained in relation to adjacent conditions that there is created such a hazard as to create a 'defective, unsafe or dangerous condition of the [street].'" *Id.* (emphasis omitted) (quoting 19 McQuillin, *Municipal Corporations,* § 54.69). Moreover, here it is undisputed that after Rose crossed the Barrientoses' parking lot, Rose crossed the City-owned sidewalk and the

---

5. Rose also argues Provo, Utah, City Ordinances § 15.10.090 (1995) required the City to repair the ditch and that Provo, Utah, City Ordinances § 15.10.050 (1995) and Utah Code Ann. § 72–7–104 (2001) required the City to require the Barrientoses to alter the asphalted planter strip. Although these provisions authorized the City to make or order changes, they did not require the

City to do so under the facts of this case. *Cf. Braithwaite v. West Valley City Corp.,* 860 P.2d 336, 338 (Utah 1993) (concluding city had no duty to build sidewalks under statute granting city discretion to build sidewalks, but concluding city had duty to provide reasonably safe conditions for pedestrian travel).

City-owned asphalted planter strip before riding into the City-owned ditch.

¶ 22 Rose argues that the evidence was sufficient to establish that the City breached its duty to provide reasonably safe conditions for travel over public ways by removing the pipe from the ditch. The City responds that Rose presented no evidence that it breached its nondelegable duty to maintain streets and sidewalks. The City emphasizes that it issued no driveway permit for the planter strip and Rose presented no evidence that it recognized the planter strip as a driveway. The City therefore maintains there was no evidence that it was negligent.

¶ 23 We disagree with the City. That the City had not issued a driveway permit does not necessarily relieve the City of liability for conditions existing on and below the asphalted planter strip. This court has recognized that " '[o]nce a governmental entity creates a condition [in the public way] that it knows or *should know* is dangerous, it must avert the danger or notify the public.' " *Jones v. Bountiful City Corp.,* 834 P.2d 556, 560 n. 2 (Utah Ct.App.1992) (emphasis added) (citation omitted); *cf. Morris v. Salt Lake City,* 35 Utah 474, 101 P. 373, 377–78 (1909) (noting even "[i]f a mere stranger . . . erected a large pole . . . in the margin of the street, . . . it would have been the duty of the city to exercise reasonable diligence to discover it, and to exercise ordinary care to remove it or to make it reasonably safe"). *See generally Pollari,* 176 P.2d at 117 ("[W]hether the city exercised proper vigilance to discover defects depends on the element of time, the nature and extent of the defect, its prominence in location and other factors bearing on what could reasonably be expected of a reasonably acting [entity] charged with the duty of supervising miles of streets and sidewalks."). Thus, notice of a dangerous condition may be constructive. *See Fishbaugh v. Utah Power & Light,* 969 P.2d 403, 407 (Utah 1998) (noting that to establish negligence, plaintiff must show that city knew or should have known of dangerous condition); *Ray v. Salt Lake City,* 92 Utah 412, 69 P.2d 256, 257 (1937) (recognizing defect in sidewalk that "having existed so long, in view of the location, should have attracted the attention of the city . . . and caused [it], in the exercise of ordinary care, to correct the defect").

¶ 24 In the present case, Elmer Barrientos testified that photo exhibits accurately represented the area from 1989 to the date of Rose's accident in 1995, the period during which the City twice removed the pipe. Because in some of the photos the planter strip appears to be a business driveway, and based on Elmer Barrientos' testimony that he called the City, the jury could find that the City was constructively, if not actually, aware that travelers were accessing the City's street via the planter strip and uncovered ditch. The jury could also infer from the photos that the asphalted planter strip into a ditch presented a dangerous condition and a foreseeable risk of injury to travelers. *Cf. Braithwaite v. West Valley City Corp.,* 860 P.2d 336, 339 (Utah 1993) (concluding material issue of fact would exist as to whether city discharged obligation to provide reasonably safe conditions for pedestrian travel if plaintiffs established that child was forced into traffic lane due to abutting landowner's encroaching fence); *Herndon v. Salt Lake City,* 34 Utah 65, 95 P. 646, 652 (1908) (noting that a city is required to put up barriers "where an obstruction or excavation is placed or made in the traveled part of the street" and whether a city street is "reasonably safe in view of all the surrounding circumstances is always a question of fact"). Accordingly, we conclude the trial court erred in directing a verdict for the City.

### III. Proximate Cause

¶ 25 The Barrientoses and the City argue that Rose's negligence—his failure to maintain a proper lookout—was the sole proximate cause of his injuries. "Proximate cause is that cause which, in natural and continuous sequence[ ] (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury." *Harline v. Barker,* 912 P.2d 433, 439 (Utah 1996) (alterations in original) (quotations and citations omitted). "[T]he issue of proximate cause should be taken from the jury only

where: (1) there is no evidence to establish a causal connection, thus leaving causation to jury speculation, or (2) where reasonable persons could not differ on the inferences to be derived from the evidence on proximate causation." *Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 487 (Utah Ct.App.1991), *aff'd*, 862 P.2d 1342 (Utah 1993).

¶ 26 Utah is a comparative negligence state. Thus, "[e]ven though [Rose] may have been negligent, [a directed verdict] is [ordinarily] an altogether inappropriate procedure for assessing [his] degree of negligence against the negligence of the defendants." *Williams v. Melby*, 699 P.2d 723, 728 (Utah 1985).

¶ 27 At trial, Rose testified that although he had previously patronized the Barrientoses' restaurant, he had not ridden through the "back" part of the parking lot. Rose further testified that he proceeded slightly ahead of his wife through the lot at about ten miles per hour. Although it is unclear from what point, Rose and his wife testified that the asphalted planter strip appeared to be a driveway that ran straight to the road. Some of the photo exhibits indicate a concrete pedestrian bridge a few feet from the driveway, but it is unclear whether either Rose or his wife saw the bridge. Rose testified that when he approached the sidewalk between the parking lot and the asphalted planter strip, he looked left around a "blind" corner for traffic. Rose's wife testified that as Rose was crossing the sidewalk, she yelled, "Watch out!" Rose testified that he believed a car was coming and continued to look left for cars. He testified that he did not recall seeing the ditch and he did not apply his brakes. Although Rose rode into the ditch, his wife testified that she was able to turn her bike and stop without riding into the ditch.

¶ 28 Although the evidence may suggest Rose negligently failed to keep a proper lookout, the evidence presented was sufficient to raise "[a] question of fact for the jury ... as to whether his distribution of attention was reasonable." *Smith v. Bennett*, 1 Utah 2d 224, 265 P.2d 401, 404 (1953). Further, a jury could find that a bicyclist could reasonably choose to exit over an apparent driveway rather than a pedestrian bridge. Because "reasonable persons could ... differ on the inferences to be derived from the evidence on proximate causation," *Steffensen*, 820 P.2d at 487, we conclude proximate cause presented a jury question.

### CONCLUSION

¶ 29 In sum, we conclude Rose presented sufficient evidence on each element to establish a prima facie case of negligence. We therefore reverse the directed verdicts in favor of the Barrientoses and the City and remand.

¶ 30 WE CONCUR: PAMELA T. GREENWOOD, Judge and WILLIAM A. THORNE JR., Judge.