2005 UT App 361

## ZION FACTORY STORES HOLDING, a California limited partnership, Plaintiff and Appellee,

v.

## Tom LAWRENCE; Quilts, Inc., a Utah corporation; and John Coffee, Defendants and Appellant.

No. 20040532–CA.

Court of Appeals of Utah.

Aug. 25, 2005.

Michael A. Day and Bryan J. Pattison, Durham, Jones & Pinegar, St. George, for Appellant.

Russell S. Mitchell, Jones, Waldo Holbrook & McDonough, St. George, for Appellee.

Before Judges BENCH, GREENWOOD, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Tom Lawrence appeals the trial court's judgment in favor of Zion Factory Stores Holding (Zion). We reverse.

## FACTUAL BACKGROUND

¶ 2 Zion operates a commercial shopping center in St. George. In 1998, Zion entered into a lease agreement with Quilts, Inc. (Quilts), whereby Zion leased retail space to Quilts for the purpose of operating a quilt store. The initial term of the lease was five years commencing on May 1, 1998. Quilts's two shareholders, John Coffee and Lawrence, each signed a personal guarantee ensuring payment on the lease. The guarantee covered all debts arising between Quilts and Zion, but was only effective through April 30, 2000, the end of the second lease year.

¶ 3 The lease contained an assignment clause requiring Quilts to notify Zion and obtain its permission prior to any assignment of the lease. Under the terms of the lease, any change in stock ownership that altered the voting control of Quilts constituted an assignment requiring Zion's permission. As equal shareholders in Quilts, Lawrence and Coffee each held fifty percent voting control when the lease was executed.

¶ 4 Quilts had difficulties making a profit from the store and by August 1999 the business was in serious financial trouble. Coffee approached Lawrence about closing the store, but Lawrence did not want to do so, in part because he did not want to incur liability under the guarantee. On August 23, 1999, Coffee sold his interest in Quilts to Lawrence. Quilts did not notify Zion or obtain its permission prior to the stock sale as required by the lease. Lawrence continued to operate the store at a loss until September 4, 2001, at which time he removed all signs and inventory and abandoned the premises.

¶ 5 Zion sued Quilts, Lawrence, and Coffee for breach of contract and payment on the guarantee. Zion obtained a default judgment against Quilts for approximately $114,000, representing the unpaid rents under the lease and various other damages including interest and late fees. Coffee died during the pendency of the litigation.

¶ 6 At issue in this appeal is the trial court's judgment against Lawrence under the guarantee. Lawrence argued that the guarantee expired in 2000 and that the abandonment and resulting damages did not occur until 2001. However, the trial court found that Quilts had breached the lease in 1999 when Coffee sold his interest to Lawrence (the assignment breach); that the assignment breach proximately caused Zion to suffer the immediate damage of "being insecure" as it prevented Zion from reevaluating its exposure to loss; that it was foreseeable that the assignment breach would result in Zion being unable to obtain full payment under the lease; and that Lawrence was therefore liable under the guarantee for Zion's breach of contract damages against Quilts. Accordingly, the trial court entered judgment against Lawrence holding him personally responsible for Zion's judgment against Quilts. Lawrence appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 7 Lawrence challenges the trial court's finding that the assignment breach

proximately caused the damages arising from Quilts's 2001 abandonment of the leased premises. "Proximate cause is ordinarily a question of fact[.]" *Rose v. Provo City*, 2003 UT App 77,¶ 10, 67 P.3d 1017. However, "where the proximate cause of the injury is left to conjecture, the plaintiff must fail as a matter of law." *Mahmood v. Ross*, 1999 UT 104,¶ 22, 990 P.2d 933 (quotations and citations omitted).

## ANALYSIS

¶ 8 Lawrence argues on appeal that the trial court erred when it found that the assignment breach proximately caused Zion's damages, resulting in Lawrence being held liable for those damages under the guarantee. We agree that Lawrence cannot be held personally liable under the guarantee, and we reverse the trial court's judgment.

¶ 9 Lawrence characterizes the trial court's decision as a finding that the assignment breach directly caused Quilts to close its store and abandon the lease. This characterization misinterprets the trial court's actual findings. To the contrary, it appears that the trial court accepted Lawrence's testimony that the quilt store went out of business for a variety of other reasons including the popularity of home quilting as a craft among local residents and an overreliance on the demand for quilts by foreign tourists.

¶ 10 Notwithstanding this acceptance of Lawrence's testimony, the trial court determined that the assignment breach was

> a material breach of the Lease in that the assignment clause is the trip wire allowing Zion the opportunity to reexamine its exposure to loss.... Because Zion was unable to be aware and was not aware of Quilts'[s] breach of the assignment clause, the damage or injury of being insecure began at the moment of the transfer. To conclude otherwise would negate the provision bargained for in the Lease.

The trial court further determined that Zion's ultimate failure to obtain full payment under the lease was a foreseeable result of the assignment breach, and that the assignment breach proximately caused those losses.

█ ¶ 11 This case turns on the language of the guarantee. The guarantee language was very broad, imposing unconditional personal liability upon Lawrence to make "due and punctual payment and performance of any and all Indebtedness of Quilts to [Zion]." The guarantee contained a broad definition of "Indebtedness":

> The word "Indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of [Quilts] heretofore, now or hereafter made, incurred or created, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether [Quilts] may be liable individually or jointly, or whether recovery upon such Indebtedness may be or hereafter become unenforceable.

However, the guarantee was limited in duration by language as clear and concise as the foregoing definition is long: "Valid until the end of the second Lease Year."

█ ¶ 12 Despite the breadth of the definition of indebtedness, we must still conclude that Lawrence's liability under the guarantee was cut off at the end of April 2000, the end of the second lease year. " '[I]n determining the nature and extent of the guarantor's liability under a guaranty of payment of rent ... the general rules of construction apply, and the contract will be strictly construed to impose only those burdens clearly within its terms.' " *Trolley Square Assocs. v. Nielson*, 886 P.2d 61, 68 (Utah Ct.App.1994) (alteration in original) (quoting *Orange–Co., Inc. v. Brown*, 181 Ind.App. 536, 393 N.E.2d 192, 196 (1979)). Here, Lawrence guaranteed the "due and punctual payment and performance" of Quilts's obligations to Zion, but only for the first two years of the lease. There is no dispute that Quilts made due and punctual payments under the lease during this timeframe.[1]

---

1. Further, there is evidence that Quilts went into arrears almost immediately upon the expiration of the guarantee, suggesting that Lawrence was relying on the two-year expiration date in his operation of Quilts.

¶ 13 Practically speaking, the trial court found that the circumstances of this case allowed Zion's complaint for damages arising after the expiration of the guarantee to relate back to a time when the guarantee was in effect. While there are certainly circumstances where this might be appropriate,[2] this case does not present them. As stated in a slightly different context in *Trolley Square*, "[t]he guarantee of lease only covered the obligations under the lease, not obligations incurred after the lease expired." *Id.* at 69. Here, the damages awarded against Lawrence were either not covered under the guarantee at all, or arose after the guarantee had expired.

¶ 14 Zion's security or insecurity was not an "Indebtedness" capable of "due and punctual payment [or] performance" under the lease, and thus Lawrence cannot be said to have guaranteed it. *See id.* at 68 (requiring strict construction of guarantee to impose only burdens clearly undertaken). The rent and other payments that Zion ultimately failed to receive would qualify as indebtedness under the guarantee, but were not incurred until after the guarantee expired. Accordingly, the trial court erred in determining that Lawrence was liable to Zion for its damages, all of which arose after April 2000. *See also McGivern v. First Capital Income Props., Ltd.*, 188 Ga.App. 716, 373 S.E.2d 817, 819 (1988) (determining that, where guarantee expired mid-lease, rent payments due prior to the expiration were guaranteed, but late charges on those same rents accruing after the expiration were not).

■ ¶ 15 To the extent that proximate cause remains relevant to this case, we cannot agree that the assignment breach proximately caused Zion's damages. The trial court's proximate cause decision rests on a factual finding that Zion would have acted to protect its financial interests in the lease had it been notified of the pending stock transfer as required. We do not disagree with this factual finding, but the trial court's exclusive reliance on it to determine proximate cause ignores the equally likely probability that Lawrence would have acted to protect *his* financial interests. Lawrence clearly knew of the guarantee and desired to avoid personal liability thereunder at the time of the assignment breach.[3] It is reasonable to infer that Lawrence would have avoided extending his personal liability if possible, and numerous avenues to do so existed. For example, Lawrence and Coffee could have postponed the stock sale entirely until May 2000, or they could have structured their deal such that the actual transfer of shares did not occur until that time. In either instance, the assignment clause would not have been triggered until after the expiration of the guarantee.

¶ 16 We cannot definitely say what actions either Zion or Lawrence would have taken had Zion been notified of and objected to Lawrence and Coffee's intent to assign. However, the trial court's assumption that Zion would have acted in its own self interest but Lawrence would not have is speculation not supported by the record. This speculation presents a separate reason why the trial court's determination of Lawrence's liability cannot stand. *See Mahmood v. Ross*, 1999 UT 104,¶ 22, 990 P.2d 933 ("Where the proximate cause of the injury is left to conjecture, the plaintiff must fail as a matter of law." (quotations and citations omitted)).

---

2. For example, if rent was based on store profits, and fraud or mistake in determining those profits resulted in an underpayment of rent during the term of the guarantee, Lawrence might be held personally liable on such underpayment even if it was not discovered until after the guarantee expired. *See, e.g., Bass v. Kimbrough*, No. 02A01–9508–CH–00178, 1996 WL 560263, at *7, 1996 Tenn.App. LEXIS 628, at **19–21 (Tenn.Ct.App. Oct.3, 1996) (applying personal guarantee to entire principal and interest on loan where default occurring before expiration of guarantee resulted in full balance becoming due and payable under acceleration clause). *But see Sunset Ctr. Props.,*

*Ltd. v. Associated Med. Health Servs., Inc.*, 585 So.2d 977, 978–79 (Fla.Ct.App.1991) (holding that personal guarantee of "due and timely performance and payment of each and every obligation of Lessee ... only during first twelve months [of lease]" did not result in liability for accelerated rent even though default occurred within first year of lease).

3. The trial court found as a matter of fact that "Mr. Lawrence refused to shut down the store because the Personal Guaranty was in effect, and instead obtained Mr. Coffee's interest in Quilts."

## CONCLUSION

¶ 17 Zion failed to establish any unpaid "Indebtedness" accruing within the two-year period during which Lawrence's personal guarantee was in effect. Accordingly, the trial court erred when it awarded monetary damages against Lawrence on a guarantee that expired before those damages accrued. The judgment below is reversed and the matter remanded for further proceedings consistent with this opinion.

¶ 18 I CONCUR: PAMELA T. GREENWOOD, Judge.

¶ 19 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Associate Presiding Judge.